58 CCPA
**JOHN C. ROGERS & CO., Inc. a/c Hoeganaes Sponge Iron Corp.**

v.

**The UNITED STATES.**

**Customs Appeal No. 5401.**

United States Court of Customs and Patent Appeals.

Feb. 4, 1971.

Sharretts, Paley, Carter & Blauvelt, New York City, attorneys of record, for appellant. Charles P. Deem, New York City, of counsel.

William D. Ruckelshaus, Asst. Atty. Gen., Andrew P. Vance, Chief, Customs Section, Martin L. Rothstein, New York City, for the United States.

Before RICH, ALMOND, BALDWIN and LANE, Judges, and NICHOLS, Judge, United States Court of Claims, sitting by designation.

RICH, Judge.

This appeal is from the judgment of the United States Customs Court, Third Division, 64 Cust.Ct. 12, C.D. 3952 (1970), overruling appellant's protest against the classification under paragraph 214, Tariff Act of 1930 as modified by T.D. 51802, of certain goods it had imported from Sweden. We affirm.

Paragraph 214, as modified, provided in relevant part as follows:

Earthy or mineral substances wholly or partly manufactured and articles, wares, and materials (crude or advanced in condition), composed wholly or in chief value of earthy or mineral substances, not specifically provided for, whether susceptible of decoration or not (except synthetic materials of gem stone quality, such as corundum and spinel, and articles and wares composed wholly or in chief value of such materials, and except marble chip or granito):

If not decorated in any manner:

Other, not decorated . . . 15% ad val.

Appellant contends that the subject merchandise should have been classified under paragraph 201(a), Tariff Act of 1930 as modified by T.D. 54108, which provided in part:

Fire brick not specially
  provided for . . . . . . . . . 5% ad val.

Since it is undisputed that the importation at bar consists of "articles * * * composed wholly * * * of earthy or mineral substances," the only question before the Customs Court was whether the imporation was otherwise "specifically provided for" in paragraph 201(a), i. e., whether the importation is "fire brick" within the common meaning of that term, and the only questions before this court are whether there is evidence to support the Customs Court's determination that it was not and whether its determination was clearly contrary to the weight of the evidence. United States v. F. W. Myers & Co., 45 CCPA 48, 52, C.A.D. 671 (1958).

*The Merchandise*

The imports consist of molded, silicon carbide tubes and interiorly flanged

rings. The tubes are about 18 inches in length and 14 inches in outside diameter with ¾ inch thick walls. The flanged rings are adapted to receive the ends of the tubes and interlock them in stacks as illustrated in plaintiff's exhibit 7, which shows the tubes and rings assembled into furnaces or reaction chambers to be exteriorily heated, supported on a kiln car:

LID-QUALITY "KRONA"
SICTO QUALITY RING
SICTO QUALITY SAGGER
SICTO QUALITY RING
SICTO QUALITY SAGGER
SICTO QUALITY RING
SICTO QUALITY SAGGER
SICTO QUALITY RING
SICTO QUALITY SAGGER
BOTTOM PIECE
ALUMO QUALITY COVER BRICKS
QUALITY KRONA BRICK
QUALITY POROSIL - PREFIRED
CASTABLE POROSIL

[A3616]

When assembled as illustrated above, except for the addition of the lids, the resulting structures are charged with a mixture of iron ore, coke, and limestone, the lids are placed on their tops, and the loaded kiln car is introduced into a kiln in which the iron ore is reduced to sponge iron.

*Opinion Below*

The court below declined to follow Trans-Seas Shipping Co. v. United States, 2 Cust.Ct. 784, Abstract 41758 (1939),[1] in which the abstracted opinion indicates that the court held the importation, invoiced as "tiles, blocks, tweels,

---

I. Appellant argues that the Customs Court in *Trans-Seas* made a judicial determination of the common meaning of the term "fire brick," as used in paragraph 201(a) of the Tariff Act of 1930, and that "the common meaning of a tariff term, once established and determined judicially, becomes a matter of law and continues until the language is changed by subsequent legislation," citing United States v. Great Pacific Co.. 23 CCPA 321, T.D. 48192 (1936). However, the latter opinion states only that "A common meaning, having been once established and determined by a court, *will be presumed* to continue until the language is changed by subsequent legislation," id. at 324 (emphasis ours), by which we think the court meant only that a previous determination that the common meaning of a tariff term as of the relevant date included or excluded. certain articles would be precedent when the same issue was raised in another case. Although it did adhere to its previous determination, the court considered the additional evidence offered in the second case and concluded that it did not

posts, covers, spout bottoms, spout pieces, and various other forms," to have been classifiable under paragraph 201(a) as firebrick rather than under paragraph 214 as earthy or mineral substances n.s.p.f. solely for the reason that they were "made from the same material as firebrick and used for the same purpose of resisting intense heat." However, rather than rejecting either of *Trans-Seas'* criteria, the Customs Court added a third.

Starting with the principle that "it is not how an article is called but how it is used that determines whether it is a brick," for which it cited Waddell & Co. v. United States, 5 Ct.Cust.Appls. 63, T. D. 34098 (1914), and extending that principle to firebricks, the court found that "all sources [for searching out the common meaning of a tariff term], some of which plaintiff cites, conjoin in the common understanding that the essential criteria of a 'fire brick' are that it is a heat resistant article used in the construction of linings for furnaces, ovens, and similar installations." The goods at bar it found not to " 'fairly and clearly' [2] meet the essential criteria for 'fire brick' " because "Assembling the tubes and rings into a chamber is not 'fairly and clearly' like constructing a furnace or oven." This finding it based on its conclusion that appellant's reaction chambers are "prefabricated units"

which are *assembled* from a small number of the imported components (ordinarily, four tubes and four rings, plus a bottom piece and a lid, according to appellant's testimony) rather than *constructed* from a large number of "standard shapes." Since the court had previously stated that it had "eliminated size and shape as essential criteria for 'fire brick'," we understand the court's distinction to have been between custom-designed major components of particular end structures and "standard shapes," usable in conjunction with many other standard shapes in a variety of end structures.

## OPINION

Neither side challenges the lower court's conclusion that the term "fire brick" as used in paragraph 201(a) of the Tariff Act of 1930 referred to "fire bricks" in the common meaning of that term and not in some specialized, industry meaning of that term. However, having concluded that the common meaning of the words "fire brick" around the year 1930 controls, the court below was faced with ascertaining what that common meaning was, and both sides contend that its factual determination [3] on this question was clearly contrary to the weight of the evidence.

Appellant, relying principally on the testimony of its witnesses but to some

---

lead "to any different conclusion than that expressed by us in the * * * [previous] case"; it did not hold the issue foreclosed. Courts are well known to change their collective minds from time to time, and we think it incontrovertible that the Customs Court, like this court, may overrule or decline to follow its previous determinations for what it considers to be sufficient reason, subject only to the normal check of appellate review.

2. The "fairly and clearly" language is the result of the lower court's finding that the instant goods "are comparatively new articles of commerce"; i. e., that they were "not known in international commerce at the time of the act." Having so determined, in reliance on R. J. Saunders & Co. v. United States, 49 CCPA

87, C.A.D. 801 (1962), the court proceeded first to determine the common meaning of the term "fire brick," which it denominated "an *eo nomine* tariff term," as of the effective date of the 1930 Tariff Act, then to consider whether or not the subject goods " 'fairly and clearly' * * * meet the essential criteria for the *eo nomine* classification."

3. This factual determination, as we understand it, was that the common meaning of the term "fire bricks" around the year 1930 included only articles which were (1) made from one of the same materials as articles which were clearly firebricks, (2) used for the same purpose of resisting intense heat, and (3) used in the construction of furnaces, ovens, and the like.

extent on lexicographic authorities and administrative publications, including various *Summaries of Tariff Information* and *Digests of Trade Data*, argues that, at or around the year 1930, the common meaning of the term "fire brick" was broad enough to cover articles which were custom-designed, prefabricated, major components of particular end structures and that the lower court's contrary determination was clearly contrary to the weight of the evidence.

The Government, appellee, relying on the historical development of the tariff provision in question, the testimony of its witness, and quotations from the *Summary of Tariff Information* (1929) and numerous dictionaries and encyclopedias, argues that firebricks were known in 1930 as but a particular kind of brick, distinguished from other bricks only by their composition, not their shape. Accordingly, the Government contends that the court below erred in failing to attach still a fourth constraint to the definition of "fire brick" as it appears in the Tariff Act of 1930, namely, that an article must be small and have at least one rectangular side to be a firebrick.[4]

We have concluded that the lower court's determination that the common meaning of the term "fire brick," as of the effective date of the Tariff Act of 1930, did not cover custom-designed, major components of prefabricated structures, such as the importations at bar, is not clearly contrary to the weight of the evidence. Accordingly, it is unnecessary to comment on the Government's contention, rejected below, that, as of the effective date of the Tariff Act of 1930, the term "fire brick" was commonly ap-

plied only to articles which were small and which had at least one planar, rectangular face.

The lower court's determination seems to have been based entirely upon lexicographic authorities and administrative publications, rather than on testimony of witnesses for either side, on the basis of which it determined the common meaning of firebrick. Most of the lexicographic authorities quoted state only that firebricks are "used" in various capacities requiring the ability to resist high temperatures, but one encyclopedia[5] states that firebricks are "used in the construction" of various high-temperature structures. Of the administrative publications, the *Summary of Tariff Information* (1929) states that firebricks are "used largely * * * in the construction" of high temperature structures, while the *Digest of Trade Data* prepared by the Tariff Commission in connection with the first Canadian Trade Agreement, T.D. 48033 (1935), states that firebricks are used "almost wholly in the construction" of such structures and the *Summaries of Tariff Information* (1948), volume 2, page 7, states that firebricks are "indispensable in the construction of" various "equipment subjected to high temperatures." This is not an overwhelming array, particularly in view of the words "largely" and "almost wholly" in two of the cited authorities and the obvious fact that, while another of the cited authorities indicates that firebricks are "indispensable" in certain kinds of construction, it does not indicate that they are not used in other situations. However, it is unquestionably "substantial evidence" in support of the lower court's determination, Brooks Paper Co. v. United States, 40 CCPA 38, 45, C.A.D. 495 (1952), so

4. The Government's brief seems to vacilate between the above constraint and the still stricter constraint that something is not a firebrick unless it is "a small, rectangular building unit." However, we think the evidence, including testimony of the Government's own witness, clearly indicates that, at the very least, the word "fire brick" was also

commonly applied around the year 1930 to small, arcuate building units having only two rectangular, planar faces.

5. The Columbia Encyclopedia, 2d Ed., the publication date of which was 1950. However, appellant has not argued that the common meaning of the term "fire brick" has changed appreciably over the years.

we turn to a consideration of whether it is clearly outweighed by the evidence for the contrary proposition.

Unfortunately for appellant, there is very little evidence in the record on this point. In its totality, it consists of two statements, one that "In my opinion, any refractory body that is used as a structural unit for a furnace for some kind of heat treatment would be a fire brick," and one that "As long as it [i. e., any article that has been fired] is used as a structural unit, I would call it a fire brick." Furthermore, these sweeping answers are somewhat limited in their scope by the questions that elicited them. The first came in response to a question whether there were "any limitations * * * to the term 'fire brick,' in connection with the shapes," and the second was in answer to whether the witness had "defined fire brick as encompassing all articles that have been fired regardless of shape, form, size, or composition." Thus, there really is no evidence that an article is a firebrick whether it is a standard shape used in conjunction with many other standard shapes in construction or whether it is a custom-designed, major component used in the assembly of a particular prefabricated end structure.

Appellant argues that

The meaning of the term "construct" so obviously encompasses the activities described by Mr. Gummeson (R. 27, 28) in the building of the importer's reaction chambers on kiln cars as to not warrant further comment, other than to set out here for the Court's convenience the definition of the word as found in Webster's New International Dictionary * * *.

We do not think it so obvious. In response to a question from the bench at oral argument, appellant's counsel conceded that a small furnace cast in its entirely from firebrick material would not come within the tariff provision "Because you would then have a structure and not a structural unit." The Customs Court has concluded in this case that eight of the nine, or possibly ten,[6] components of the small, externally fired furnaces into which the importations at bar are ultimately assembled do not come within the tariff provision for "fire bricks," although each component is separately cast from firebrick material and all are used for the purpose of resisting intense heat, because they are "prefabricated units" designed to be *assembled* into the furnaces and not "masonry units" designed to be used in *constructing* them. We cannot say that its conclusion that this distinction is in accord with the common meaning of the term "fire brick" as of the effective date of the statute here involved is clearly contrary to the weight of the evidence.

The judgment of the Customs Court is affirmed.

Affirmed.

---

**6.** If a bottom piece is used rather than simply using the top of the kiln car as the bottom of the furnace, the number is ten.