(C. D. 1644)

JAMES BUTE COMPANY *v.* UNITED STATES

United States Customs Court, Second Division

(Decided October 14, 1954)

*Franklin, Kelly & Graham* (*Edward A. Kelly* of counsel) for the plaintiff.
*Warren E. Burger*, Assistant Attorney General (*John J. Antus* and *Mollie Strum*, trial attorneys), for the defendant.

Before LAWRENCE, RAO, and FORD, Judges

RAO, Judge: Certain unbleached cotton cloth, imported from Mexico, forms the subject of the instant protests which were consolidated for the purposes of trial. This merchandise was classified as cotton cloth, not bleached, printed, dyed, or colored, and assessed with duty at the appropriate rates provided for in paragraph 904 (a) of the Tariff Act of 1930, dependent upon the average yarn count. There was also imposed upon said cloth an assessment of 10 cents per pound on the cotton contained therein having a staple of 1⅛ inches or more, as required by the provisions of paragraph 924 of said act,

which, in the case of protest 141991–K, was found by the collector to be 62.5 per centum of the cotton contained in the cloth covered thereby; in the case of protest 141992–K, 63.6 per centum; and in protest 141993–K, 35 per centum.

The assessment of duty at the basic rates provided for in paragraph 904 (a), *supra*, is not here in issue. It is the sole claim of the plaintiff that there was no cotton having a staple of 1⅛ inches or more in any of the imported cloth, and that, therefore, the terms of said paragraph 924 were improperly invoked.

The pertinent provisions of the Tariff Act of 1930 read as follows:

PAR. 904. (a) Cotton cloth, not bleached, printed, dyed, or colored, containing yarns the average number of which does not exceed number 90, 10 per centum ad valorem and, in addition thereto, for each number, thirty-five one-hundredths of 1 per centum ad valorem; exceeding number 90, 41½ per centum ad valorem: *Provided*, That none of the foregoing shall be subject to a less duty than fifty-five one-hundredths of 1 cent per average number per pound.

PAR. 924. All the articles enumerated or described in this schedule (except in paragraph 922) shall be subject to an additional duty of 10 cents per pound on the cotton contained therein having a staple of one and one-eighth inches or more in length.

It thus appears that the issue in this case is confined to the question of what was the length of the staple of the cotton of which the subject cloth was composed. The decision of the collector to the effect that paragraph 924, *supra*, has application to the merchandise at bar is presumptively correct and rests upon the implication that he has found the existence of all facts necessary to sustain his ruling. *United States* v. *I. Magnin & Co., Inc.*, 21 C. C. P. A. (Customs) 77, T. D. 46394; *United States* v. *Marshall Field & Co.*, 17 C. C. P. A. (Customs) 1, T. D. 43309. Accordingly, it must be presumed, at the outset of this inquiry, that the involved cloth contains cotton having a staple of 1⅛ inches or more, to the extent of the percentages hereinabove indicated, and that the plaintiff has the burden of establishing the contrary. That is not to say that the presumption of correctness in and of itself possesses evidentiary value or may be weighed against relevant and material proof proffered by the plaintiff. If a *prima facie* case, adequately meeting all of the material issues in the controversy, is made out, the presumption is destroyed, and the Government has the burden of going forward with affirmative evidence to support the collector's classification. That party then is entitled to prevail in whose favor the proof preponderates.

The foregoing fundamental principles as applied to a question similar to the one before us are succinctly stated in the case of *Morse Bros. (Inc.)* v. *United States*, 13 Ct. Cust. Appls. 553, T. D. 41432, as follows:

The board stated that the importers had not overcome the presumption of correctness attaching to the finding of the collector. We do not know what

method of determining the staple the collector used—if any at all—but if the importers had introduced no testimony, the presumption of the correctness of the collector's finding would not have been overcome and would have been conclusive, under the circumstances of this case. The importers having assumed the burden of overcoming the presumption and having introduced testimony making a *prima facie* case controverting the presumed facts, then the presumption attaching to the collector's finding falls. Then if the evidence supporting the importers' contention outweighs the evidence supporting the collector's position, the importers are entitled to a decision in their favor. In weighing the evidence, the presumption of correctness attaching to the finding of the collector is not to be regarded as having evidential value, and can not be weighed against the evidence of the party challenging the correctness of his finding. *United States v. Edson Keith & Co.*, 5 Ct. Cust. Appls. 82; *United States v. Bloomingdale Bros. & Co.*, 10 Ct. Cust. Appls. 149.

At the trial of the instant case, plaintiff introduced the testimony of three witnesses and various exhibits were received in evidence in its behalf. One witness was called by defendant, his testimony being accompanied by the introduction of several exhibits.

The first witness to appear on behalf of the plaintiff was John Barry York, president of James Bute Company. He stated that, during the period between the fall of 1944 and the spring of 1945, he was vice president of his company, in complete charge of the importation of cotton cloth from Mexico. He initiated the purchase, handled all the financial details, and arranged for the entry of the merchandise. In all, there were 17 importations of cotton cloth, purchased from Jean Hermanos & Co. of Mexico, and, so far as this witness knew, there was no difference whatsoever between the material involved in the three cases before the court and the merchandise included in the 14 other importations.

York produced, and there were received in evidence as plaintiff's exhibits 1, 2, and 3, respectively, the commercial invoices for the shipments covered by the instant protests. Although he was unable to find a sample of the fabric actually coming from any one of the entries under protest, he submitted to the court a piece of cloth, which his counsel characterized as indicative of the type of material which had been imported. The witness' comments on the sample, received in evidence as plaintiff's exhibit 4, are as follows:

I found that sample which you have there. As to whether this came from any one of the importations involved here, I do not know. This was returned from a customer as unsatisfactory, and we gave him his money back. This is the type of cloth, but I cannot say that it came from one of these importations, although it might have.

George Jean, manager of Jean Hermanos & Co., exporter of the fabric at bar, was the second witness for plaintiff. His experience in the textile field included 3 years of study of the construction of textile materials at schools in France and England and in the State of Alabama, and, after service in the Army from 1939 to 1944, continuous employment in textile mills and factories. In the course of his

connection with textile mills, he has had occasion to check the length of cotton being used in the manufacture of cloth and to be familiar with the kind of cotton his company buys and uses.

Jean testified that, during the period between June 1944 and May 1945, Jean Hermanos & Co. made 17 shipments of cotton cloth to James Bute Company and that plaintiff's exhibit 4 was a sample of the material which had been sold. All of that merchandise was manufactured by the El Cannes Manufacturers from cotton of the same kind, having a staple length of 1½₂ inches. So-called invoices showing the receipt by Jean Hermanos & Co. of 600 bales of cotton with a staple length of 1½₂ inches were received in evidence as plaintiff's exhibits 5 through 10. This witness stated that the raw cotton identified on these exhibits, all of which was low middling cotton with a staple length of 1½₂ inches, was the only cotton used at the El Cannes mill from June or July 1944 through February or March 1945, and that it is almost impossible to secure cotton in Mexico with a longer staple than 1½₂ inches.

It appears further from the testimony of this witness that the machinery used at the El Cannes mill was manufactured in 1875. It was of a kind which had to be specifically adjusted to the type of cotton being woven. If cotton with a staple of 1½₂ inches was being fabricated, the machinery could not accommodate cotton with a longer staple, without changing the spindle of the machinery. For the manufacture of the instant class of material, it would take about 44 hours to switch from cotton with a staple of 1½₂ inches to cotton having a staple length of 1⅛ inches.

Witness Jean also stated that he did not remember having personally made a test of any of the cotton involved in the three cases before the court, but that out of each 100 bales received at the factory, 4 or 5 were checked, each bale showing the same test. In addition, when cotton is purchased by his company, the Mexican Government tests the length of the staple, and taxes are paid on the weight of the cotton. The Mexican Government determines staple length by ocular inspection and also by research. His company follows the same procedure as the Mexican Government, but not any Department of Agriculture standards.

Upon being questioned by the court, witness Jean admitted that he had never worked as a stapling expert, had received no training in school on the subject, and did not consider himself an expert in the field of determining the length of the staple of cotton.

Joel Franklin Hembree, an employee of the Texas Cotton Research Committee, in charge of its cotton merchandise research, was also called as a witness in behalf of plaintiff. Although he might well be regarded as an expert cotton stapler, no useful purpose would be served in here setting forth, in detail, the substance of his testimony, for the reason that his vast experience had no actual application to

the merchandise at bar. Certain general observations may, however, be drawn from his testimony and from the stapling demonstration which he performed in open court. These are (1) that in stapling raw cotton the "cotton classifier does not consider the longest or the shortest fibers. He simply attempts to pick out a typical portion of the fibers"; (2) that the processes of spinning and weaving cotton cloth will have the effect of stretching the fibers as much as $\frac{3}{32}$ of an inch; and (3) that plaintiff's exhibit 4 is a type of cloth manufactured by a process known as osnaburg, in which, according to statistics of the Department of Agriculture (plaintiff's exhibit 13), there is, ordinarily, 43.4 per centum of cotton with a staple of $\frac{15}{16}$ to $\frac{31}{32}$ of an inch.

For the defendant, George E. Beavers, chemist of the New Orleans Customs Laboratory, was called to testify. He stated that he has been with the United States Customs Laboratory for 17 years, in New York, Kansas City, and New Orleans; that the New Orleans division covers various cities in Louisiana, Alabama, and Texas, including Galveston, and its subport, Houston (the port of entry of the instant merchandise); that it is one of the official duties of the chemist in the New Orleans laboratory to staple samples of cotton and that he had personally stapled cotton and cotton cloth. Beavers produced, and there were received in evidence as defendant's exhibits A, B, and C, the official chemist's reports for each of the three involved entries. The chemist who made the analyses, under the supervision of the witness, was one Madelyn Lulich, no longer in the employ of the Government. These reports show for entry 36 H, "Cotton staple—$1\frac{1}{8}''$ or over—In our opinion the cotton staple is approximately 62.5% over $1\frac{1}{8}''''$"; for entry 52H, "In our opinion the cotton staple is approximately 63.6% $1\frac{1}{8}''$ or over"; and for entry 101 H, "In our opinion, the cotton staple is approximately 35% by weight $1\frac{1}{8}''$ or over." The actual work sheets of the chemist who made the tests of samples of the subject merchandise, which served as a basis for the reports, were received in evidence as defendant's exhibits D, E, and F, respectively, for each of said entries. The tests were performed in accordance with the standard method prescribed in instructions issued by the Bureau of Customs and received in evidence as defendant's exhibit I.

Beavers had, as a United States chemist, actually stapled cotton and cotton cloth for about 4 years, during which time he had tested between 2,500 to 3,000 samples by the method prescribed in defendant's exhibit I. On the basis of his experience, he disagreed with the conclusion reached by plaintiff's witness Hembree to the effect that spinning and weaving has a tendency to stretch the fibers.

We are constrained to conclude, from the record as here reviewed, that a *prima facie* case in favor of plaintiff has not been made out.

Unfortunately, no samples of the imported merchandise were available at the time of trial for examination by the witnesses or inspection by the court. George Jean, the only witness with any semblance of qualifications to testify concerning the cloth involved in these disputed entries, was, by his own admission, not an expert in the field of determining the length of the staple of cotton. Necessarily, then, any testimony he may have given about the staple length of the raw cotton purchased by his firm and presumably used in the cotton mill which produced the cloth in question must have been predicated upon what he learned from others. It is obviously hearsay testimony with little or no probative force or effect.

Moreover, the record fails to show what, if any, relationship existed between the manufacturer of the cloth, the El Cannes mills, and Jean Hermanos & Co., the firm of which witness Jean was the manager, so as to substantiate his testimony that only the 600 bales of cotton enumerated on plaintiff's exhibits 5 through 10—which we note are, in reality, sheets of ruled paper with the company title of "Jean Hnos. & Co. S. De R. L." in the upper left-hand corner—were used in the manufacture of the cloth here involved. There is no evidence placing the manager of the exporter at the mill in position to observe the use of any particular raw cotton in the manufacture of any specific cotton cloth. His expression of familiarity with the machinery at the mill, and the necessity for changing the spindles to accommodate cotton of varying staple lengths, falls short of proving that the factory, in fact, was using $1\frac{1}{32}$-inch cotton in the instant cloth.

No witness employed by the manufacturer was called to testify. The evidence of record fails to show under what circumstances the cotton received by Jean Hermanos & Co. became the cotton converted by the El Cannes mills into the cloth which formed the subject of the entries before us, even assuming said cotton to be of a staple length of less than $1\frac{1}{8}$ inches. We have only the word of an admittedly unqualified witness that the cotton in the 600 bales enumerated on said exhibits 5 through 10 was of a staple length of $1\frac{1}{32}$ inches. We have only unsupported statements that this cotton, and no other, was used at the mill. We may not infer therefrom either that the raw cotton was of the staple length it was stated to be or that such cotton was indeed the substance out of which the subject cloth was made.

Omissions in proof may not be supplied by speculation or supposition. United States v. Enrique C. Lineiro, 37 C. C. P. A. (Customs) 5, C. A. D. 410. Neither may it be said that a plaintiff has discharged the burden of overcoming the presumption of correctness attaching to the collector's classification of imported merchandise unless every material fact has been established. We do not find the evidence of record in the instant case to be sufficient for the purpose for which it was offered, to wit, to show that the cotton cloth in issue was fabricated from raw cotton of a staple length of less than $1\frac{1}{8}$ inches. Ac-

cordingly, therefore, the claim in the protest to that effect, must be overruled.

Judgment will be entered accordingly.