60 CCPA

## ALUMINUM COMPANY OF AMERICA, Appellant,

v.

The UNITED STATES, Appellee.
Customs Appeal No. 5501.

United States Court of Customs and Patent Appeals.
May 24, 1973.

Barnes, Richardson & Colburn, New York City, attorneys of record, for appellant; Joseph Schwartz, James S. O'Kelly, New York City, of counsel.

Harlington Wood, Jr., Asst. Atty. Gen., Andrew P. Vance, Chief, Customs Section, James Caffentzis, New York City, for the United States.

Before MARKEY, Chief Judge, RICH, BALDWIN and LANE, Judges, and ALMOND, Senior Judge.

LANE, Judge.

This appeal is from the judgment of the United States Customs Court, 67 Cust.Ct. 400, C.D. 4303 (1971) overruling the importer's protest against the classification of certain imported merchandise under item 522.21 TSUS as fluorspar containing *not over* 97% by weight[1] calcium fluoride. The importer claims the merchandise is properly classifiable under item 522.24 TSUS as containing *over* 97% by weight of calcium fluoride. We reverse.

The fluorspar was imported from Spain in shipments entered at Point Comfort, Texas on September 6, 1967, and December 26, 1967. The record reveals that the importer had samples of the fluorspar taken from both shipments, which samples were subdivided into lots, identifiable as "Manisa" and "Allegra" shipments after the importing vessels. Some lots were sent to customs for laboratory analysis, while others were retained by the importer. Classification under 522.24 resulted from the customs laboratory analysis under Customs Method 207.1[2] reporting that both shipments contained close to, but not over, 97% of calcium fluoride.

In support of its protest, appellant introduced evidence to show the merchandise included over 97% calcium fluoride before being exported and that analyses made of the sample lots in its behalf showed over 97% calcium fluoride. Appellee countered with evidence regarding the customs laboratory tests.

### The Evidence

Appellant's first witness was Manuel Rodriguez, the director of the mines and mills of the Spanish producer of the imported fluorspar. He testified that fluorspar it produced and shipped to the United States is always produced under specifications requiring in excess of 97% calcium fluoride, that the mill employs numerous controls and tests and, if material is found to be running under 97% calcium fluoride, steps are taken to elevate the content before the material leaves the plant.

Walter Frederick, a chemical research technician in appellant's laboratories, testified to analyzing two samples from each shipment following Customs Method 207.1. In the case of the Manisa shipment, Frederick found a calcium fluoride content of 97.32% and 97.48%,

---

[1]. All references hereinafter to percentage of calcium fluoride will be by weight, whether or not so specified.

[2]. A method of analysis fully described in a document of record.

His results for the Allegra shipment were 97.79% and 97.25%.

Donald Maryak, a chemist employed by Booth, Garrett & Blair, Inc., commercial chemists, samplers and analysts, testified to analyzing samples of the importation by a modified Bureau of Standards testing method which he considered reliable and which had been used by the firm for over 15 years. His analyses showed a calcium fluoride content of 97.-37% for the Allegra shipment and 97.-14% for the Manisa shipment. Maryak also analyzed samples using Customs Method 207.1 with the results showing 97.11% for the Manisa shipment and 97.14% for the Allegra shipment.

Russell Eakin, a chemist employed by a company engaged in sampling and analyzing fluorspar and other materials, testified that he personally analyzed samples by Customs Method 207.1 and found a calcium fluoride content of 97.-32% for the Allegra shipment and 97.-05% for the Manisa shipment.

Paul Pittman and Harold P. Pastor, chemists at the customs laboratory, testified to conducting analyses by Customs Method 207.1. Pittman reported finding 96.58% and 96.51% calcium fluoride in samples from the Manisa shipment and 96.92% and 96.86% in samples from the Allegra shipment. Pastor testified he found 96.72% and 96.60% calcium fluoride for the Manisa shipment and a customs report in evidence shows an average of 96.87% for the Allegra shipment based on four tests, two by Pittman and two by Pastor.

### The Customs Court's Decision

The Customs Court observed that the customs chemists used Method 207.1, "a concededly reliable and accurate method when properly conducted," to make their analyses. It further stated that the results they obtained, if not rebutted, are presumed to be correct, citing Consolidated Cork Co. v. United States, 54 Cust.Ct. 83, C.D. 2512 (1965). It then noted that the customs chemists' description of their tests omitted some

steps and deviated from others that are prescribed in Customs Method 207.1. However, it found that appellant had not brought out evidence, either by cross-examination or rebuttal, to enable it to determine whether the omissions or deviations amounted to critical departures from Customs Method 207.1. It then concluded:

> Since we find no evidence which rebuts "the reliability of the government's methods and, in particular, its accuracy in these analyses", T. H. Gonzalez v. United States, 54 CCPA 104, 107, C.A.D. 918 (1967), the presumption of correctness which attaches to the customs classification has not been overcome, and the protest is overruled.

### OPINION

The Customs Court reached its decision on the basis of whether appellant had proved that the analysis made by the customs chemists were erroneous. Finding that it had not, the court ruled that the presumption of correctness attaching to the customs classification was not overcome. We think the court misapplied the reasoning of the *Consolidated Cork* case upon which it relied. In *Consolidated Cork*, the Customs Court correctly set forth the law applicable in cases like the present as follows:

> It is well settled that the methods of weighing, measuring, and testing merchandise used by customs officers and the results obtained are presumed to be correct, United States v. Gage Bros., 1 Ct.Cust.Appls. 439, T.D. 31503; United States v. Lozano, Son & Co., 6 Ct.Cust.Appls. 281, T.D. 35506; Draper & Co., Inc. v. United States, 28 Cust.Ct. 136, C.D. 1400. However, this presumption may be rebutted by showing that such methods or results are erroneous. Sears, Roebuck & Co. v. United States, 3 Ct. Cust.Appls. 447, T.D. 33035; Gertzen & Co. v. United States, 12 Ct.Cust. Appls. 499, T.D. 40697; Pastene & Co., Inc. v. United States, 34 Cust.Ct. 52, C.D. 1677. Furthermore, the pre-

sumption does not have evidentiary value and may not be weighed against relevant and material proof offered by the plaintiffs. If a *prima facie* case is made out, the presumption is destroyed, and the Government has the burden of going forward with the evidence. United States v. Edson Keith & Co., 5 Ct.Cust.Appls. 82, T.D. 34128; Hawley & Letzerich et al. v. United States, 19 CCPA 47, T.D. 44893; United States v. Magnus, Mabee & Reynard, Inc., 39 CCPA 1, C.A.D. 455; James Bute Company v. United States, 33 Cust.Ct. 130, C.D. 1644. [54 Cust.Ct. at 85.]

■ Appellants here submitted evidence of analysis they applied to the merchandise which gave a result different from that claimed by the Government. That evidence was sufficient to establish a *prima facie* case and require the Government to go forward with the proof. The Government did so. The issue then comes down to weighing the evidence, recognizing that the original presumption in favor of the appraisement does not have evidentiary value and may not be weighed against the proofs offered by appellant. *Consolidated Cork,* supra; United States v. Magnus, Mabee & Reynard, Inc., 39 CCPA 1, C.A.D. 455 (1951).

■ We think the preponderance of the evidence is in favor of the appellant's position that the imported fluorspar contained over 97% calcium fluoride. The testimony that the producer always produced fluorspar for the United States under specifications calling for such a calcium fluoride content and that fluorspar was a stable material that would not change in that respect during importation is significant evidence in appellant's favor. Also, the analyses on behalf of appellant were five in number for each shipment, were made in three different laboratories by two or three different methods by three different operators, and all showed over 97% calcium fluoride. The Government's analyses showing less than 97% calcium fluoride totaled four on each shipment and all were made in the same laborato-

ries by the same method, although two chemists participated. Moreover, the testimony of the customs chemists indicates that they omitted certain steps described in Customs Method 207.1 and deviated from others.

The Customs Court found that the record offered no basis on which it could "evaluate and weigh the customs chemists' testimony vis-a-vis what they did in following Customs Method 207.1." It stated:

What we must weigh is whether the customs chemists' testimony of what they did in following Customs Method 207.1 for analyses of fluorspar affected the accuracy of the results stated in the laboratory reports. Plaintiff [appellant] did not cross-examine the customs chemists on any of the alleged omissions or deviations pointed up in its brief, nor is there any testimony that the alleged omissions or deviations constituted critical departures from Customs Method 207.1.

Cross-examination or testimony in rebuttal might have established that critical steps in Customs Method 207.1 were, indeed, omitted or significantly deviated from in the customs analyses. Customs Method 207.1 is a technical set of instructions for sampling fluorspar. The customs chemists described what they did following those instructions. Plaintiff [appellant], if inclined to challenge, could have cross-examined the customs chemists and tested what they testified to, paragraph by paragraph, and line by line, with the instructions set forth in Customs Method 207.1. Plaintiff [appellant], in the absence of a relevant searching cross-examination now asks us to evaluate and weigh technical testimony against technical instructions and determine that the instructions were not followed.

That approach of the Customs Court was clearly erroneous. The testimony of the customs chemists was Government evidence offered in rebuttal of the prima facie case of appellant. It was the responsibility of the Government to show that any deviation from Customs Meth-

od 207.1 did not impair the accuracy of the results. While we, like the Customs Court, find the record unconvincing on the question, the deficiency lessens the strength of the Government's case. It does not weaken the case of appellant.

The Government does assert that there were some deviations from Customs Method 207.1 in Frederick's analysis, particularly that he did not try to pass it through an 80 mesh screen. The importance of this seems minimal, however, since the record shows that the imported material was ground to 100 mesh in production. Overall, the absence of any substantial basis for questioning the accuracy of the analyses made on behalf of appellant, along with the uniform results (over 97% calcium fluoride) from analyses in different laboratories by different persons using different methods makes out a persuasive case for appellant.

The protest should have been allowed and the merchandise classified under item 522.24 TSUS. Accordingly, the judgment of the Customs Court is reversed.

Reversed.