**EXXON CORPORATION (Successor to Humble Oil & Refining Company), Chevron Oil Company,**

**v.**

**UNITED STATES.**

**C.D. 4772; Court No. 74-5-01359.**

United States Customs Court.

Oct. 16, 1978.

Donohue & Donohue, New York City (Joseph F. Donohue, Sr., Joseph F. Donohue, Jr. and William J. Phelan, New York City, of counsel), for plaintiffs.

Barbara Allen Babcock, Asst. Atty. Gen., Washington, D. C. (Sidney N. Weiss, Trial Atty., New York City), for defendant.

FORD, Judge:

This action involves two entries of a petroleum derivative known as motor alkylate, a naphtha used as a blending stock in the manufacture of certain motor fuel. The merchandise was classified by Customs for duty purposes as motor fuel under item 475.25, Tariff Schedules of the United States, and assessed with duty at the rate of 1.25¢ per gallon.

Plaintiffs contend, due to contamination in the discharge line at the Bayway, New Jersey refinery, the results of Customs tests do not reflect the properties of the merchandise imported. The merchandise imported, plaintiffs allege, is naphtha and as such is subject to classification under item 475.35 and dutiable at 0.25¢ per gallon.

The pertinent statutory provisions involved read as follows:

GENERAL HEADNOTES AND RULES
OF INTERPRETATION

\* \* \* \* \* \* \*

10. General interpretative rules—For the purposes of these schedules—

\* \* \* \* \* \* \*

(e) in the absence of special language or context which otherwise requires—

(i) a tariff classification controlled by use (other than actual use) is to be determined in accordance with the use in the United States at, or immediately prior to, the date of importation, of articles of that class or kind to which the imported articles belong, and the controlling use is the chief use, i. e., the use which exceeds all other uses (if any) combined;

\* \* \* \* \* \* \*

Schedule 4, part 10 headnotes:

\* \* \* \* \* \* \*

2. For the purposes of this part—

\* \* \* \* \* \* \*

(b) "Motor fuel" (item 475.25) is any product derived primarily from petroleum, shale, or natural gas, whether or not containing additives, which is chiefly used as a fuel in internal-combustion or other engines.

\* \* \* \* \* \* \*

| 475.25 | Motor fuel | 1.25¢ per gal. |
|---|---|---|

\* \* \* \* \* \* \*

| 475.35 | Naphthas derived from petroleum, shale oil, natural gas, or combinations thereof (except motor fuel) | 0.25¢ per gal. |
|---|---|---|

The record consists of the testimony of ten witnesses, five called on behalf of plaintiffs and five by defendant. In addition, plaintiffs introduced 27 exhibits and defendant 13 exhibits. In effect, the record establishes plaintiffs ordered motor alkylate C–74. The designation C–74 was Exxon specifications. (Plaintiffs' exhibit 3.) Samples were taken before shipment, analyzed and found to be within the specifications except as to the 90 percent distillation point and the lead content. Exxon notified the shipper the merchandise was acceptable. The merchandise was tested on four separate occasions in Aruba. These tests were made prior to loading, during the loading, on board the tanker, and after completion of the loading. Plaintiffs' exhibit 1 contains in column marked C–74 the results of the tests made on the merchandise in tank 355 from which the merchandise was drawn. The column marked "ship" indicates the results of the tests of the merchandise on the ship.

Evidence was also adduced by the testimony of George Vlandis, an employee of the shipping company. It was established the vessel was "dry" and various documents indicated a normal voyage with no leakage, etc. which may have caused contamination.

Upon arrival the merchandise was discharged into three tanks. The line wash to clear the discharge line was discharged into shore tank 1117 and the cargo was discharged into shore tanks 233 and 1113. Approximately half was discharged into tank 233 which contained a "heel" of alkylate (merchandise in the tank from a previous importation). Tank 233 contained 596,799 gallons to which was added from the instant importation 2,254,576 gallons. Tank 1113 contained 3,307,994 gallons as a heel to which was added from the importation 2,202,803 gallons.

According to witness Peterson the test results of tank 233 (plaintiffs' exhibit 21), which contained the imported merchandise and the heel in the tank, was consistent with the results of the tests in Aruba (plaintiffs' exhibit 1).

Defendant's tests, represented by plaintiffs' exhibits 22 and 23 found the API gravity at 60° F. and the 10, 50 and 90% distillation to be within the requirements of ASTM specifications for motor fuel as set forth in T.D. 66–23(13). There is evidence to the effect that the results found by plaintiffs in exhibit 21 theoretically could

not have occurred with the mixture of the heel and the imported product.

The standards for motor fuel contained in T.D. 66–23(13) provide as follows:

T.D. 66–23(13) *Motor fuel. Standards for classification of naphtha-type and kerosene-type materials as motor fuel.* —The following table captioned "CRITICAL PROPERTIES OF MATERIALS CHIEFLY USED AS MOTOR FUELS IN INTERNAL COMBUSTION OR OTHER ENGINES IN THE UNITED STATES" is published for the guidance of customs officers in identifying petroleum materials which are chiefly used as motor fuels as defined in *Schedule 4, Part 10, Headnote 2(b)*, and classifiable under the provision for Motor fuel, in *item 475.-25, TSUS*. Classification of an imported petroleum product as a Motor fuel under *item 475.25, TSUS*, would be indicated if for each of the properties listed in the table for a given type of motor fuel, the corresponding properties of the imported product fall within the ranges set out in the table for that type of motor fuel. The standards for motor fuels contained herein supersede any standards previously published by the Bureau for petroleum materials chiefly used as motor fuels. These standards in the table will be reviewed periodically and revised, when appropriate, to reflect any change in chief use of such materials.

CRITICAL PROPERTIES OF MATERIALS CHIEFLY USED AS
MOTOR FUELS IN INTERNAL COMBUSTION OR OTHER ENGINES
IN THE UNITED STATES
(For Use in Classifying Imported Naphtha-Type or
Kerosene-Type Materials)

| | Automotive | | Aviation Turbine Fuels | |
| | | | Military JP–4 | Military JP |
| | Gasoline all grades | Gasoline all grades | Commercial JET B | Commercial JET A & A1 |
| --- | --- | --- | --- | --- |
| | | Minimum to Maximum Range Limits | | |
| Gravity, °API, ASTM D–287 | 56.3–67.7 | 64.0–76.2 | 49.1–56.5 | 36.5–46.0 |
| Distillation, ASTM D–86 | | | | |
| °F at 10% D + L | 103–135 | 138–165 | 180–246 | 352–394 |
| °F at 50% | 185–233 | 174–220 | 232–360 | 392–432 |
| °F at 90% | 301–358 | 213–260 | 331–468 | 424–495 |
| Reid Vapor Pressure, psi ASTM D–323 | 7.5–13.2 | 5.8–7.0 | 2.0–2.9 | 0.0–0.5 |
| Octane (Research) ASTM D0908 | 83.1–103.3 | 81–105 | – | – |
| Octane (Motor) ASTM D–357 | 79.5–99.6 | 81–105 | – | – |
| Freeze Point, °F, ASTM D–1477 | – | – | (–110)–(–76) | (–69)–(–48) |
| Olefins, Volume %, ASTM D–1319 | – | – | 0–2.9 | 0.0–4.5 |
| Appearance | | Clear and Bright | | |

Bureau letter dated January 19, 1966.  (418.114)

It is noted that classification as motor fuel requires "each of the properties listed" for such finding. The testimony of the customs chemist and the results set forth in plaintiffs' exhibit 23 indicate only four of the ten properties in T.D. 66–23(13), i. e., API gravity at 60° F., the 10, 50 and 90% distillation. Mr. Palm, the government chemist who performed the tests, admitted that these four properties alone are insufficient to arrive at the conclusion said merchandise is aviation motor fuel. Accordingly, defendant's laboratory tests do not establish the imported merchandise to be motor fuel and therefore any presumption of correctness which may have attached to said classification is rebutted. *Aluminum Company of America v. United States,* 60 CCPA 148, C.A.D. 1102, 477 F.2d 1396 (1973); *Consolidated Cork Corp. v. United States,* 54 Cust.Ct. 83, C.D. 2512 (1965). In *Consolidated Cork, supra* the court made the following observation:

It is well settled that the methods of weighing, measuring, and testing merchandise used by customs officers and the results obtained are presumed to be correct. *United States v. Gage Bros.,* 1 Ct. Cust.Appls. 439, T.D. 31503; *United States v. Lozano Son & Co.,* 6 Ct.Cust. Appls. 281, T.D. 35506; *Draper & Co., Inc. v. United States,* 28 Cust.Ct. 136,

C.D. 1400. However, this presumption may be rebutted by showing that such methods or results are erroneous. *Sears, Roebuck & Co. v. United States,* 3 Ct. Cust.Appls. 447, T.D. 33035; *Gertzen & Co. v. United States,* 12 Ct.Cust.Appls. 499, T.D. 40697; *Pastene & Co., Inc. v. United States,* 34 Cust.Ct. 52, C.D. 1677. Furthermore, the presumption does not have evidentiary value and may not be weighed against relevant and material proof offered by the plaintiffs. If a *prima facie* case is made out, the presumption is destroyed and the Government has the burden of going forward with the evidence. *United States v. Edson Keith & Co.,* 5 Ct.Cust.Appls. 82, T.D. 34128; *Hawley & Letzerich et al. v. United States,* 19 CCPA 47, T.D. 44893; *United States v. Magnus, Mabee & Reynard, Inc.,* 39 CCPA 1, C.A.D. 455; *James Bute Company v. United States,* 33 Cust.Ct. 130, C.D. 1644. [54 Cust.Ct. at 85.]

Defendant, not having complied with its own directives, T.D. 66–23(13) must affirmatively establish the alkylate to be motor fuel once plaintiffs have established a prima facie case.

■ Whether or not, as contended by plaintiffs, the merchandise was contaminated by the failure to wash out the cross-over pipe is immaterial and only an assumption. The preponderance of credible evidence, four separate tests in Aruba and the tests conducted at Bayway, leads to the conclusion that the imported merchandise was not within the standards required by both ASTM and Customs for motor fuel. The record does establish the involved alkylate to be a blending agent used in the manufacture of motor fuel and is therefore not motor fuel itself. All other matters having been considered, the court finds plaintiffs have established the correct classification to be under item 475.35 TSUS, as claimed.

Judgment will be entered accordingly.