AMERICAN WINE & IMPORTING CO., PLAINTIFF *v.* UNITED STATES, DEFENDANT

Court No. 75–7–01745

(Decided December 2, 1980)

*George R. Tuttle* (*Stephen S. Spraitzar* at the trial and on the briefs) for the plaintiff.

*Alice Daniel,* Assistant Attorney General; *Joseph I. Liebman,* Attorney in Charge, Field Office for Customs Litigation (*Jerry P. Wiskin* at the trial and on the brief), for the defendant.

RICHARDSON, Judge: This case involves the tariff reclassification of Lambrusco Amabile red wine imported from Italy.

The U.S. Customs Service classified the imported merchandise under item 167.10, TSUS, as modified by T.D. 68–9 with a duty rate of $1.17 per gallon, plus $3.40 per gallon Internal Revenue Tax under 26 U.S.C. 5041(b)(4)—a total of $67,000—as "champagne and other sparkling wines," on the basis of an official laboratory report of one bottle of the imported merchandise by the Bureau of Alcohol, Tobacco and Firearms Field Laboratory in Atlanta, Ga., which showed that the carbon dioxide content was in excess of the statutory limit of 0.277 grams per 100 milliliters. There were 700 cases of wine with 12 (1 pt., 8 ozs.) bottles to each case in the shipment.

The plaintiff, American Wine & Importing Co., contends that the carbon dioxide content of the imported wine was less than 0.277 grams per 100 milliliters, and as such should have been classified under item 167. 30 as a still wine produced from grapes, with duty assessable thereunder at the rate of 37.5 cents per gallon plus 17 cents per gallon Internal Revenue Tax under 26 U.S.C. 5041(b)(1); and that the test result of the Customs Service was not representative of the imported merchandise.

In support of plaintiff's contention it introduced into evidence reports of three laboratory tests by Industrial Laboratories in Fort Worth, Tex., of three bottles of the shipment the laboratory had tested which showed the following grams of carbon dioxide per 100 milliliters of wine: 0.240, 0.242, and 0.234; and laboratory reports by Allied Analytical & Research Laboratories in Dallas, Tex., of four bottles of the shipment it had tested, which showed the following grams of carbon dioxide per 100 milliliters of wine: 0.162, 0.168, 0.351, and 0.211. Allied had four other bottles tested which were well below the maximum. (Where more than one test was run on a bottle, the court has taken the highest test results.)

It is noted that, with the exception of one bottle tested by Allied Analytical & Research Laboratories at 0.351, the bottles tested by both companies tested below the statutory limit of 0.277. Plaintiff claims the test results below 0.277 are representative of the imported merchandise.

Henri A. Loper, general manager of American Wine & Importing Co., testified that in all shipments prior to the one in issue including shipments through 1974, and subsequent to the one in issue, the Lambrusco wine from the same vinter and bottler in Italy, Melandri, was classified as still wine by Customs.

After Customs had one bottle of the merchandise in issue tested by the field laboratory, Bureau of Alcohol, Tobacco and Firearms in Atlanta, Ga., plaintiff, through its broker, Darrell J. Sekin, had

Industrial Laboratories test two bottles of the shipment, which averaged out 0.240 grams of carbon dioxide per 100 milliliters. These test results were submitted to the Customs Service, which elected to rely on their own laboratory test. Mr. Sekin received and sent to Industrial Laboratories another bottle from the same shipment which also tested below 0.277 grams per 100 milliliters of carbon dioxide.

Mr. Herman Morris Weller, a chemist and president of Allied Laboratories in Dallas, Tex., after being qualified as an expert witness, testified that in his opinion defendant's test of one bottle of the shipment was inadequate, and that Allied's test results were adequate and reliable.

Mr. Donald Cowan Strathdee, chief chemist of Industrial Laboratories of Fort Worth, Tex., after being qualified as an expert witness testified that in his opinion, defendant's test of one bottle was inadequate; and that Industrial's test of three bottles was well below 0.277 grams per 100 milliliters.

Defendant's witness, Mr. Clarence E. Paul, chief of the field laboratory of the Bureau of Alcohol, Tobacco and Firearms in Atlanta, Ga., who made the test on the one sample bottle submitted to him, admitted on cross-examination that statistically the test made for the American Wine Co. were more representative of the entire shipment than the one test performed for the Customs Service, because Industrial and Allied "analyzed more samples" than he did. And "you could probably say there are more samples in this lot of wine that are below 0.277 than there are above."

The Customs import specialist, Mr. Harvey O. McFadden, stated that he was responsible for determining how many samples should be procured, that he only requested one bottle from American Wine, and that he thought it representative of the carbon dioxide content of the shipment. He said that he acted pursuant to section 14.2(h), 19 CFR 14.2(h) (1973), which provided:

> If the District Director of Customs requires samples from packages not designated for examination, he shall request the importer, on Customs form 5561, to submit *them* [Italic added.].

Apparently Mr. McFadden was not aware that section 14.2(h) had been superseded by section 151.11 in 1974 when the merchandise was entered. There was however no change in substance in the new section 151.11. It is noted that the regulation says samples, not one sample.

Plaintiff contends that "Part 41.—Sampling" contained in its exhibit 4—the Customs Manual—section 41.3(b)(4)Z requires that in lots of 501 and over there should be two samples tested. There were 700 cases in the involved shipment. It is required that: "The provisions of this manual are to be strictly observed and followed by

all Customs officers and employees unless compliance with any such provision be expressly waived in writing." Mr. McFadden testified that he had not known of any document waiving the provisions of part 41. Defendant's argument that the provisions in the manual are directory and not mandatory is inconsistent with the language in the manual requiring that its provisions be strictly complied with. The Government must comply with testing requirements. *United States* v. *Exxon Corporation, Chevron Oil Co.*, 66 CCPA 129, C.A.D. 1233, 607 F. 2d 985 (1979).

The defendant cites the case of *Rosen Enterprises, Inc.* v. *United States*, 76 Cust. Ct. 226 (1976) as being in support of its position that part 41 is not applicable. The *Rosen* case involved a question of appraisement of cigarette lighters which had been examined and released by Customs inspectors under special permits for immediate delivery. The court assumed the appropriate designation and examination of the merchandise for appraisement purposes was made in compliance with law as there was no evidence to the contrary introduced by the plaintiff. The case before the court involves a classification, rather than an appraisement issue, and the part 41 relied upon by plaintiff relates to "Sampling for laboratory purposes as distinguished from sampling for appraisement purposes  The latter are governed by instructions issued locally by the various appraisers," now import specialists. Customs Manual, section 41.1(b) of part 41 states "The amount of sampling for testing called for in this part 41 represents the minimum requirements." Two samples were the minimum required of more than 501 cases and the involved shipment contained 700 cases; and the Government elected to make only one sample.

The defendant raises the doctrine of comm'ngling in its brief. No notice of commingling was given to American Wine by Customs. Commingling was not raised in the pleadings or at the trial, and it is not applicable to the facts in this case.

Plaintiff, through the evidence it has adduced showing that the carbon dioxide content of the wine was less than 0.277 grams per 100 milliliters of wine, has made a prima facie case. The evidence presented by the government is not sufficient to rebut plaintiff's evidence. Therefore, the classification of the Customs Service that the imported me: chandise is "champagne and other sparkling wines" is overruled and the import is classified as a "still wine" under item167.30. *Aluminum, Company of America* v. *United States*, 60 CCPA 148, C.A.D. 1102 477 F. 2d 1396 (1973).

Judgment will be entered accordingly.