**ANHYDRIDES & CHEMICALS, INC., Plaintiff–Appellant,**

v.

**UNITED STATES, Defendant–Appellee.**

**No. 96–1344.**

United States Court of Appeals, Federal Circuit.

Dec. 3, 1997.

Peter J. Fitch, Fitch, King and Caffentzis, of New York City, argued for plaintiff–appellant. With him on the brief was Richard C. King.

Bruce N. Stratvert, Civil Division, International Trade Field Office, Department of Justice, of New York City. With him on the brief were Frank W. Hunger, Assistant Attorney General, and David M. Cohen, Director, of Washington, D.C., and Joseph I. Liebman, Attorney in Charge, International Trade Field Office. Of counsel on the brief was Chi S. Choy, Office of Assistant Chief Counsel, International Trade Litigation, United States Customs Service, of New York City.

Before NEWMAN, LOURIE and BRYSON, Circuit Judges.

PAULINE NEWMAN, Circuit Judge.

Anhydrides & Chemicals, Inc. appeals the judgment of the United States Court of International Trade,[1] sustaining the Customs Service tariff classification of certain succinic anhydride imported from Italy. We conclude that the imported goods are classified under subheading 2917.19.50 of the Harmonized Tariff Schedule of the United States (HTSUS). The judgment of the Court of International Trade is reversed.

## BACKGROUND

The imported product is succinic anhydride made from maleic anhydride which in turn is made from butane from natural gas. The Customs Service classified this succinic anhydride under subheading 2917.19.27 of the HTSUS. It is not disputed that if 2917.19.27 does not apply, the applicable classification is subheading 2917.19.50. Relevant portions of Heading 2917 follow:

2917 Polycarboxylic acids, their anhydrides, halides, peroxides, and peroxyacids; their halogenated, sulfonated, nitrated, or nitrosated derivatives (con.):
          Acyclic polycarboxylic acids, their anhydrides, halides, peroxides, peroxyacids, and their derivatives (con.):

\* \* \*

2917.19       Other:

\* \* \*

          Maleic acid;
          Succinic acid derived in whole or in part from maleic anhydride or from cyclohexane;
          Glutaric acid derived in whole or in part from cyclopentanone; and anhydrides, halides, peroxides, peroxyacids and other derivatives derived in whole or in part from aromatic hydrocarbons, of maleic acid, of succinic acid derived in whole or in part from maleic anhydride or from cyclohexane or of glutaric acid derived in whole or in part from cyclopentanone, not elsewhere specified or included:

\* \* \*

          Other:
2917.19.23          Maleic acid
2917.19.27          Other

\* \* \*

        Other:
2917.19.40          Derived in whole or in part from aromatic hydrocarbons.
2917.19.50          Other

Subheading 2917.19.27 carries a tariff of 3.7¢ per kilogram plus 16.8% *ad valorem*. The rate for subheading 2917.19.50 is 4% *ad valorem*.

The issue of interpretation is whether the subheading clause "anhydrides, halides, peroxides, peroxyacids and other derivatives . . . of succinic acid derived in whole or in part from maleic anhydride or from cyclohexane" includes succinic anhydride that is not derived from succinic acid derived from maleic anhydride or cyclohexane. The imported succinic anhydride is made directly from maleic anhydride, with no succinic acid whatsoever formed during the reaction. The Court of International Trade held that "[t]he

HTSUS does not impose any requirement that the succinic acid anhydride must have been succinic acid at any time during the production process," and affirmed the classification under subheading 2917.19.27. This appeal followed.

## I

Classification rulings based on interpretation of the HTSUS receive plenary review, in accordance with precedent governing the construction of tariff provisions. *National Advanced Systems v. United States*, 26 F.3d 1107, 1109 (Fed.Cir.1994); *Simod America Corp. v. United States*, 872 F.2d 1572, 1576 (Fed.Cir.1989). The application of

---

1. *Anhydrides & Chemicals, Inc. v. United States*, 18 I.T.R.D. (BNA) 1379 (1996).

the correctly interpreted tariff classification to a particular article is a question of fact; such determinations of the Court of International Trade are reviewed for clear error. *Id.*

■ Appellant explains that the tariff classification of succinic anhydride, under the HTSUS as under the prior TSUS, depends on how the succinic anhydride is made. For example, succinic anhydride may be made by dehydration of succinic acid, which in turn may be made from cyclohexane, from maleic or fumaric acid, from maleic anhydride, or from sugar. Succinic anhydride may also be made by direct hydrogenation of maleic anhydride, which in turn may be made from benzenoid chemicals or from non–aromatic sources. The succinic anhydride here imported was made from maleic anhydride made from butane produced from natural gas.

Succinic acid is not formed during the chemical processes here used, even as a transient intermediate product. Appellant states that this is dispositive of the tariff classification, arguing that subheading 2917.19.27 requires derivation from succinic acid which has in turn been derived from either maleic anhydride or cyclohexane. Appellant points out that under the prior TSUS succinic anhydride not derived from aromatic hydrocarbons was classified in an "other" category dutiable at 4.2%, and that neither maleic anhydride nor cyclohexane is an aromatic hydrocarbon. Appellant stresses that the rewriting of the TSUS in 1988 was not intended to make any significant change in tariff rates, and that the HTSUS must be interpreted accordingly.

Technical experts at trial presented opposite views as to whether "anhydrides, halides, peroxides, peroxyacids and other derivatives ... of succinic acid derived in whole or in part from maleic anhydride or from cyclohexane" included succinic anhydride that is made directly from maleic anhydride without formation of succinic acid. Both sides' expert's readings of the HTSUS were reasonable as presented. However, Appellant's interpretation is favored by both the organizational and grammatical structure of the tariff subheading and the legislative purpose of the HTSUS.

■ The heading for class 2917 includes acyclic polycarboxylic acids and their anhydrides, halides, and certain other chemicals, while the subheading for 2917.19.27 is specific as to the sources of certain of these acids. Applying the rules of grammar, in this subheading the phrase "derived in whole or in part from maleic anhydride or from cyclohexane" modifies "succinic acid," not "anhydrides, halides, peroxides, peroxyacids and other derivatives." The rules of grammar apply in statutory construction:

> Referential and qualifying words and phrases, where no contrary intention appears, refer solely to the last antecedent, which consists of "the last word, phrase, or clause that can be made an antecedent without impairing the meaning of the sentence."

C. Dallas Sands, 2A SUTHERLAND STATUTORY CONSTRUCTION, 4th ed., § 47.33 (footnotes omitted). *Cf. In re Porter,* 961 F.2d 1066, 1075 n. 16 (3d Cir.1992) ("We also read the statute to use 'secured by an interest in the same property' to modify the phrase immediately preceding, 'an existing extension of credit by the same creditor,' rather than to modify 'refinancing,' which appears far earlier in the sentence."). Since "succinic acid" is the last antecedent to "derived in whole or in part from maleic anhydride or cyclohexane," whereas "anhydride" appears earlier in the sentence, the clause is properly read as modifying "succinic acid."

Although not a model of clarity, the overall structure of the HTSUS classification suggests that succinic acid of defined chemical source, and derivatives of this succinic acid, are the focus of the 2917.19.27 classification, and that succinic anhydride that is not derived from this succinic acid is not included in this category. Support for this reading arises in the legislative history, which stresses that the purpose of the rewritten tariff schedules was not to make significant rate

changes, but simply to convert to "harmonized" nomenclature. As President Reagan stated in initiating this conversion:

> In converting the tariff schedules the Commission should avoid, to the extent practicable and consonant with sound nomenclature principles, changes in rates of duty on individual products.

*Institution of Investigation for the Conversion of the Tariff Schedules of the United States into the Nomenclature Structure of the Harmonized System,* 46 Fed.Reg. 47,897 (ITC 1981).

■ The HTSUS implementation documents of record do not suggest the fourfold increase in tariff that necessarily follows from Customs' interpretation of 2917.19.27. It is not disputed that under the TSUS succinic anhydride not derived from benzenoid, quinoid, or modified benzenoid hydrocarbons was classified under Item 426.04, at the rate of 4.2% *ad valorem.* Upon enactment of the HTSUS, the Conference Report reiterated the purpose of the new nomenclature:

> The conferees believe that the HTS fairly reflects existing tariff and quota treatment and that the conversion is essentially revenue-neutral. Enactment of the tariff and quota treatment provided in this subtitle is intended to supersede and replace existing treatment as a matter of domestic law. The conferees find that any changes in the rates of duty are consequential to the process of converting to the new nomenclature, and are necessary to reflect an overall balance of tariff concession commitments between the United States and its trading partners in the GATT.

H.R.Rep. No. 100–576 at 548 (1988), *reprinted in* 1988 U.S.C.C.A.N. 1547, 1581. *See Marubeni America Corp. v. United States,* 35 F.3d 530 (Fed.Cir.1994) (legislative history shows that any changes in tariff under the HTSUS are consequential to the process of converting to new nomenclature). Customs' interpretation of the HTSUS classification in a way that would markedly increase the duty, although there was no prior indication that the rate was intended to undergo a major increase, is viewed with caution. *Hemscheidt Corp. v. United States,* 72 F.3d 868, 872 (Fed.Cir.1995) ("Nothing in the HTSUS indicates that Congress instructed Customs to cease its established and uniform classification practice regarding the subject articles.")

In light of the administrative mandate and legislative purpose that conversion to the harmonized system would leave existing duty rates undisturbed as much as possible, the courts have consulted the classification history under the TSUS as a guide to resolving uncertainties that have arisen because of the nomenclature. *See Lonza, Inc. v. United States,* 46 F.3d 1098, 1107 (Fed.Cir.1995) ("Absent clear evidence of legislative intent to embrace an alternative statutory definition, and in light of its historical pedigree, the court cannot help but conclude that the TSUS definition of 'drugs' survives as the common and commercial meaning of the term under the HTS."); *Beloit Corp. v. United States,* 843 F.Supp. 1489, 1502 (Ct. Int'l Trade 1994) ("The court concludes Customs' uniform and long-standing practice, as codified in items 912.06 [TSUS] and 668.05 [TSUS], demonstrates Customs' classification of Yankee dryer cylinders under subheading 8419.32.50 [HTSUS] is incorrect and the merchandise is properly classifiable under subheading 8439.99.10 [HTSUS].")

It is highly relevant that Congress and the executive stated their intention to maintain generally revenue–neutral tariff treatment in converting to the nomenclature of the HTSUS. The record shows no proposal to change the tariff treatment of succinic anhydride. Under the TSUS succinic anhydride produced from benzenoid sources was classified under Item 407.05 at 16.8% duty, while succinic anhydride produced from maleic anhydride made from natural gas was classified under Item 426.04 at 4.2%. The government has provided no basis for concluding that a significant change in tariff was intended for succinic anhydride produced from maleic anhydride produced from natural gas.

In light of these several considerations, we are persuaded that appellant's succinic anhy-

dride was not correctly classified under subheading 2917.19.27, and is classified under 2917.19.50. The decision of the Court of International Trade is modified accordingly.

## II

■ The government argues that Customs Service rulings must be given special deference by this court and by the Court of International Trade, citing the presumption of correctness in 28 U.S.C. § 2639(a)(1) (1970):

> § 2639. **Burden of proof; evidence of value.**
>
> (a)(1) ... [I]n any civil action commenced in the Court of International Trade under section 515, 516, or 516A of the Tariff Act of 1930, the decision of the Secretary of the Treasury, the administering authority, or the International Trade Commission is presumed to be correct. The burden of proving otherwise shall rest upon the party challenging such decision.

The government states that this presumption of correctness applies not only to Customs' factual findings and its application of the law to particular facts, but also to Customs' interpretation of the law. The government states that contrary precedent, whereby doubts are resolved in favor of the taxpayer/importer, conflicts with this statute.

Appellant states that § 2639(a)(1) relates to the burden of proof, and did not change the rule of construction of revenue statutes whereby unclear or ambiguous tariff classifications have traditionally been resolved in favor of the importer. This rule of construction has applied at least since Justice Story's explanation that revenue statutes, which are neither remedial nor in implementation of public policy, are in doubtful cases construed in favor of the citizen, lest burdens be imposed beyond the statutory revenue–producing purpose:

2. The "dual burden" of proof required the importer to establish both that Customs' classification was incorrect and that the importer's proposed classification was correct. By requiring the importer to show that Customs' classification was incorrect, it embodied the presumption of

[It is] a general rule in the interpretation of all statutes, levying taxes or duties upon subjects or citizens, not to extend their provisions, by implication, beyond the clear import of the language used, or to enlarge their operation so as to embrace matters, not specifically pointed out, although standing upon a close analogy. In every case, therefore, of doubt, such statutes are construed most strongly against the government, and in favor of the subjects or citizens, because burdens are not to be imposed, nor presumed to be imposed, beyond what the statutes expressly and clearly import. Revenue statutes are in no just sense either remedial laws or laws founded upon any permanent public policy, and, therefore, are not to be liberally construed.

*United States v. Wigglesworth*, 28 F. Cas. 595, 596–97 (C.C.D.Mass.1842). *See, e.g., Hartranft v. Wiegmann*, 121 U.S. 609, 616, 7 S.Ct. 1240, 1244, 30 L.Ed. 1012 (1887) ("But, if the question were one of doubt, the doubt would be resolved in favor of the importer, 'as duties are never imposed on the citizen upon vague or doubtful interpretations.'") (quoting *Powers v. Barney*, 5 Blatchf. 202). As explained by the Court of Customs and Patent Appeals, the presumption of correctness in customs cases has coexisted with Supreme Court precedent for over a century:

> The many cases in this court in which the so–called "dual burden" of proof has been applied were based on principles long established by the Federal Courts in dealing with customs cases. This long established rule appears to have its origin in *Arthur v. Unkart*, 97 U.S. 118, 24 L.Ed. 768 (1877).

*United States v. National Starch Products*, 50 C.C.P.A. 1, 318 F.2d 737, 740 n. 4 (1962).[2] This long established rule was again confirmed in *Rollerblade, Inc. v. United States*, 112 F.3d 481 (Fed.Cir.1997). The purpose

correctness. As this Court has noted, the second prong of the dual burden (that the importer's proposed classification is correct) is no longer the law. *See* 28 U.S.C. § 2643(b); *Jarvis Clark Co. v. United States*, 739 F.2d 628, 629 (Fed.Cir. 1984).

was to impart stability to customs rulings by inhibiting importers from filing appeals merely in order to require the government to come forward with justification of its action. *Aluminum Co. of America v. United States,* 60 C.C.P.A. 148, 477 F.2d 1396, 1399 (1973). *See United States v. Greek Orthodox Church of Evangelismos,* 49 C.C.P.A. 35, 40 (1962) (referring to the "rule of liberal construction in favor of the importer") (citing *Benziger v. United States,* 192 U.S. 38, 54, 24 S.Ct. 189, 195, 48 L.Ed. 331 (1904)). The courts have patiently explained that § 2639(a)(1) codified the presumption of correctness that places the burden of proof on the importer, but that it did not change the rules of construction of the HTSUS. *Cf. Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 255 n. 8, 101 S.Ct. 1089, 1095 n. 8, 67 L.Ed.2d 207 (1980) ("The word 'presumption' properly used refers only to a device for allocating the production burden.") (quoting Fleming James, Jr. & Geoffrey C. Hazard, Jr., CIVIL PROCEDURE § 7.9, at 255 (2d ed.1977)). Evidentiary presumptions set the burdens of proof and production, but they do not affect the determination of issues of law.

Thus the presumption of correctness, initially judge-made and since 1970 codified, places the burden of proof on the challenger. The presumption does not, however, change the rule of strict construction of revenue statutes, or negate judicial responsibility for correct construction of tariff classifications. In *Rollerblade,* 112 F.3d at 484, the court explained that when there is no factual dispute the presumption of correctness under § 2639(a)(1) is irrelevant. The issue of deference to the Customs Service tariff classification has been repeatedly laid to rest. *E.g.,*

*Universal Electronics Inc. v. United States,* 112 F.3d 488, 493 (Fed.Cir.1997) ("[I]n the context of a classification dispute, neither this court nor the Court of International Trade defers to Customs' interpretation of a tariff heading on the basis of special deference pursuant to *Chevron* "); *Rollerblade,* 112 F.3d at 484 ("We reiterate here that no *Chevron* deference applies to classification decisions by Customs."); *IKO Industries, Ltd. v. United States,* 105 F.3d 624, 626 (Fed.Cir.1997) (Customs did not acquire the deference denied it under *Chevron* by resorting to the long-standing presumption of § 2639(a)(1)); *Goodman Mfg., L.P. v. United States,* 69 F.3d 505, 508 (Fed.Cir.1995) ("Because there was no factual dispute between the parties, the presumption of correctness is not relevant.") In this case the issue is tariff classification based on interpretation of the HTSUS. The presumption of § 2639(a)(1) does not add evidentiary weight; it simply places the burden of proof on the challenger. The government is incorrect in stating otherwise.

Costs to Appellant.

*REVERSED.*