UNITED STATES v. GREAT PACIFIC CO., SHUI TAI & CO. (No. 3936)[1]

[1] T. D. 48192.

320

United States Court of Customs and Patent Appeals, February 24. 1936

*Joseph R. Jackson*, Assistant Attorney General (*Richard E. FitzGibbon* and *Ralph Folks*, special attorneys, of counsel), for the United States.

*Lawrence & Tuttle* (*Lawrence A. Harper, Martin T. Baldwin*, and *Abraham Gottfried* of counsel) for appellees.

[Oral argument February 4, 1936, by Mr. Folks and Mr. Baldwin]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

GRAHAM, Presiding Judge, delivered the opinion of the court:

This is an appeal from a judgment of the United States Customs Court. The appellee Great Pacific Co. imported rice at the port of San Francisco, Calif., under the Tariff Act of 1922, on various dates from January 13 to June 2, 1926, which was classified by the collector as milled rice, at two cents per pound under paragraph 727 of said act. The appellee Shui Tai & Co. imported similar rice on March 4, 1931, under the Tariff Act of 1930, which was classified as milled rice at two and one-half cents per pound under paragraph 727 of the Tariff Act of 1930. The appellee Great Pacific Co. filed protest, claiming the rice should have been segregated and the broken rice therein should have been classified at one-half cent per pound as broken rice, under paragraph 727 of the Tariff Act of 1922. There was also an alternative claim as a non-enumerated manufactured or unmanufactured article, under paragraph 1459 of said act. The appellee Shui Tai & Co. protested, claiming the imported rice should have been segregated and the broken rice content thereof should have been classified for duty as broken rice at five-eighths cent per pound, under paragraph 727 and section 508 of the Tariff Act of 1930. There was also a claim as a non-enumerated manufactured or unmanufactured article, under paragraph 1558 of said act.

It appeared on the hearing below that all the imported rice had been subjected to a milling process. It was also stipulated as to the importations involved in protest 286526–G of the Great Pacific Co. that the imported rice contained 15.8 per centum of broken grains, of a size less than three-fourths of a whole grain, and that, as to the importation involved in protest 513575–G of Shui Tai & Co., the rice contained 2.4 per centum of broken grains which would pass readily through a metal sieve perforated with round holes five and one-half sixty-fourths of an inch in diameter.

The cases having been consolidated for purposes of trial, the several records in other similar cases, hereinafter referred to, were offered and received in evidence, and one witness was called and examined. The Customs Court sustained the protests as to the respective amounts of broken rice shown by the stipulation and the Government has appealed.

It is not urged here that the imported goods are dutiable as unenumerated manufactured or unmanufactured articles. The appellees rely entirely on their claims as "broken rice" under said paragraph 727 of the Tariff Act of 1922, and paragraph 727 of the Tariff Act of 1930, which are, respectively, as follows:

PAR. 727. Paddy or rough rice, 1 cent per pound; brown rice (hulls removed), 1¼ cents per pound; milled rice (bran removed), 2 cents per pound; broken rice, and rice meal, flour, polish, and bran, one-half of 1 cent per pound.

PAR. 727. Paddy or rough rice, 1¼ cents per pound; brown rice (hulls removed, all or in part), 1½ cents per pound; milled rice (bran removed, all or in part), 2½ cents per pound; broken rice, which will pass readily through a metal sieve perforated with round holes five and one-half sixty-fourths of one inch in diameter, and rice meal, flour, polish ; and bran, five-eighths of 1 cent per pound.

The sections relative to commingling and segregation of goods, section 507, Tariff Act of 1922, and section 508, Tariff Act of 1930, are identical, and are as follows:

COMMINGLING OF GOODS.

Whenever dutiable merchandise and merchandise which is free of duty or merchandise subject to different rates of duty are so packed together or mingled that the quantity or value of each class of such merchandise can not be readily ascertained by the customs officers, the whole of such merchandise shall be subject to the highest rate of duty applicable to any part thereof, unless the importer or consignee shall segregate such merchandise at his own risk and expense under customs supervision within ten days after entry thereof, in order that the quantity and value of each part or class thereof may be ascertained.

The Government here contends that the imported rice is milled rice, and that it should be classified within the express statutory language, "milled rice," although containing broken grains; that it was improper for the trial court to order this milled rice to be segregated for duty purposes, and that the rice is dutiable as an entirety. The appellees contend that by the language "broken rice" in said paragraph 727, the Congress meant to include, as a separate dutiable commodity, broken grains of rice, and that, if such broken grains are readily segregable, which it is claimed is true here, they should be segregated, and such broken grains should be assessed for duty as provided for in said paragraphs 727, according to any limitations therein respectively provided.

The records in *Great Pacific Co.* v. *United States*, T. D. 46921, 65 Treas. Dec. 334, *United States* v. *M. J. Brandenstein & Co.* and cross appeal, reported in 17 C. C. P. A. (Customs) 480, T. D. 43941, and *Monroe R. Green* v. *United States*, T. D. 44888, 59 Treas. Dec.

1155, were offered and received in evidence. These contain the testimony of several witnesses. The record in *Rice Millers' Assn. et al.* v. *United States and Oberle (Inc.)*, reported in 15 Ct. Cust. Appls. 355, T. D. 42560, was also offered in evidence by the Government, and objections thereto were sustained.

Error is assigned to this ruling. Rule 25 of the United States Customs Court is, in part, as follows:

When a question involving substantially the same character of goods, or involving substantially the same issue arising by protest, appeal, or petition, is under consideration for decision before a judge or division empowered to take testimony, and a decision has been previously made, the record and testimony taken in such case, within the discretion of the court, may be admitted in evidence in the pending case on motion of either plaintiff or defendant, unless objection, which shall be sustained by the court, is made by either party.

The trial court was of opinion that the issues in the proffered case were not "substantially the same," calling attention to the fact that in the record offered, the issue was whether "broken rice" was intended to cover "brewer's rice," while here no such issue is involved. We are of opinion that the trial court did not abuse its discretion in refusing to admit the offered record.

While there is much evidence in the record as to what constitutes "milled rice" and "broken rice" in the trade, it is not contended that proof of commercial designation of either of these terms has been made. Mr. FitzGibbon, for the Government, stated on the record:

Mr. FitzGibbon. On the question of commercial designation, the Court of Customs and Patent Appeals held in the *Rice Millers Association* case that there was no commercial designation. The Government, in this case, does not claim there is a commercial designation.

We have had the question of the proper classification of broken rice before us on several occasions. It appears from the earliest of these cases, *United States* v. *Seattle Brewing & Malting Co.*, 1 Ct. Cust. Appls. 362, T. D. 31454, that there is nothing new about the segregation of broken rice grains in an importation. There, under the provisions of the tariff act of July 24, 1897, the customs officials were determining, by screening, the quantity of—

rice broken which will pass through a sieve known commercially as number twelve wire sieve.

In *Rice Millers' Assn. et al., supra,* rice was classified as "broken rice" by the collector, and was claimed by the American producers to be dutiable as "milled rice (bran removed)" under paragraph 727 of the Tariff Act of 1922. The rice was broken into half grains or smaller, and contained but a small percentage of whole grains.

The effort in that case was to prove that the term "broken rice," when applied to *"foreigners,"* meant only "brewer's rice." The court held that the evidence established that there were three classes of

broken rice, namely, second heads, screenings, and brewer's rice; that the Congress, when enacting the Tariff Act of 1922, deliberately omitted from paragraph 193 of the tariff act of October 3, 1913, the language which defined broken rice as broken grains ' which would pass through a No. 12 sieve, and used the term "broken rice" in the 1922 act, without limitations; that no commercial designation of brewer's rice as broken rice had been established, and that, therefore, the imported goods were properly classifiable as "broken rice."

The subject next came before us in *United States* v. *Brandenstein & Co.*, *supra*. In that case, 10.1 per centum of broken rice was contained in the importation, and the whole importation was classified as milled rice, under the Tariff Act of 1922. The evidence in that case was much like that offered here and disclosed, among other facts, that broken rice was milled and that all commercial milled rice contained broken grains. We there held that the importer was entitled to segregation and a classification of his broken rice as such; that the term "broken rice," as commonly understood, "means grains of rice that have been broken or separated into smaller parts." We then said:

It clearly appears from the testimony in the case that the common meaning of the term "milled rice" is the same as the commercial meaning, and that the common and commercial meaning is the same as the statutory definition. It is true that milled rice is bought and sold according to grade and is known by various grade terms (what those grade terms are, or exactly how many there are, can only be conjectured, as the trade witnesses did not agree), and that broken rice, in varying percentages, is included in these commercial grades of milled rice. However, it must be presumed that the Congress was informed of this situation when it enacted the paragraph in question. Accordingly, had there been any intention to distinguish between the broken rice provided for in the paragraph at one-half of 1 cent per pound and the broken rice contained in the various commercial grades of milled rice, it would have been a simple matter for the Congress to have said so.

Later we said:

* * * Accordingly, under the rule adopted by this court that a change of language in a tariff statute imports, generally, a change of legislative purpose, it would seem that the Congress intended that the provision for broken rice in paragraph 727, *supra*, should include all broken milled rice. *Tausend et al.* v. *United States*, 15 Ct. Cust. Appls. 323, T. D. 42490. This statement is subject to the qualification, however, that proof of commercial designation might greatly limit the meaning and application of the term "broken rice."

As to the importations under the Tariff Act of 1922, it remains to be seen whether the record here calls for any departure from our judgment and views expressed in the *Brandenstein* case, *supra*. There we determined the common meaning of the term "broken rice." Having once determined it, it is questionable whether that question can again be reopened here. A common meaning, having been once established and determined by a court, will be presumed to continue until the language is changed by subsequent legislation.

*United States* v. *Pacific Butchers Supply Co.*, 22 C. C. P. A. (Customs) 355, 357, T. D. 47377; *United States* v. *Felsenthal*, 16 Ct. Cust. Appls. 15, T. D. 42713.

But if it might be successfully urged that this court should again consider and redetermine the common meaning of the term "broken rice," under the Tariff Act of 1922, we do not find, in the record, any evidence which would lead us to change our views expressed in the *Brandenstein* case, *supra*, on that subject. The evidence here is mostly a repetition of, or cumulative to, the evidence there produced. The only additional evidence is a pamphlet entitled "Handbook of Official Standards for Milled Rice, Brown Rice, and Rough Rice," issued by the Bureau of Agricultural Economics of the United States Department of Agriculture. Some doubt is expressed by the trial court as to whether this pamphlet is in evidence. However, both parties treat it as properly in evidence, and we shall so consider it. This booklet was published by the Department of Agriculture in January, 1928, several years after the importations herein, under the Tariff Act of 1922, and six years after the Tariff Act of 1922 was enacted. As the trial court observed, this handbook cannot be "of any assistance in determining the intention of Congress in the use of the terms milled rice and broken rice involved in the tariff act." It appears from the record that earlier grades were established, some "tentative" grades having been fixed and promulgated as early as 1920. What these grades were, however, does not appear from the record.

This pamphlet recites certain grades of domestic rice and defines the same. It is apparent that it was not intended to apply to imported rice, the first provision being:

U. S. STANDARDS FOR MILLED RICE

For the purposes of the United States standards for milled rice:

MILLED RICE.—Milled rice shall be whole or broken kernels of rice grown in continental United States, from which the hulls and practically all of the germs and bran layers have been removed, which may be either coated or uncoated, and which does not contain more than 10 per cent of cereal grains, including paddy grains, seeds, or other foreign material, either singly or in any combination.

As a matter of caution, in *United States* v. *Brandenstein, supra*, we said:

There is no evidence in the record that any applicable standards or grades of rice have been established, under the law, by any authorized department of the United States Government, and in what we may say hereinafter nothing shall be construed as an expression of our views if such a state of facts were established.

It was in attempted compliance with this suggestion that the said handbook was offered in evidence. We are unable, however, to see wherein it is helpful here, or leads to any different conclusion than that expressed by us in the *Brandenstein* case, *supra*.

The opinion of this court, in the *Brandenstein* case, *supra*, was handed down and final judgment rendered on March 19, 1930. We must presume that the case was before the committees of the Congress when the Tariff Act of 1930 was finally written and enacted into law. Paragraph 727 of the Tariff Act of 1922 was practically rewritten in paragraph 727 of the Tariff Act of 1930, the only changes being in rates and the limitation of the size of broken rice. The reenactment must be taken as a legislative ratification of our judicial construction made in the *Brandenstein* case. *United States* v. *Bassichis & Co. et al.*, 16 Ct. Cust. Appls. 410, T. D. 43133, and cases therein cited. It therefore follows that, there being no attempted proof of commercial designation here, so far as the importations under the Tariff Act of 1930 are concerned, the decision in the *Brandenstein* case, *supra*, must be followed, and the protest under said act must be sustained.

Finally, it is urged that the broken rice cannot be readily segregated. The record is replete with evidence to the contrary. The methods of doing so are well known to the customs officials and are in use by them. There was, originally, a question on the record as to whether Hong Kong or United States standards should be used in determining the content of broken rice, the Hong Kong standard being anything less than one-half of a grain and the domestic standard being any grain less than three-quarters of a grain. The Government has here conceded, in its brief, that the United States standard should be used, which conforms with the view of the importer, and, also, of this court.

As to the doctrine of entireties which is urged here, it is evident, from what we have said as to segregation, that there is no room for its application here. Moreover, there does not seem to be any more reason for its application here than there was in *United States* v. *Washburn-Crosby Co.*, 14 Ct. Cust. Appls. 243, T. D. 41874, where wheat and screenings were involved; or *United States* v. *Waterhouse*, 1 Ct. Cust. Appls. 353, T. D. 31452, involving coal and slack; or *Consolidated Elevator Co.* v. *United States*, 8 Ct. Cust. Appls. 267, T. D. 37536, involving flaxseed and screenings, in all of which segregation was held to be proper.

This disposes of the various questions presented, and the judgment of the United States Customs Court is *affirmed*.