Slip Op. 03-47

UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: RICHARD K. EATON, JUDGE

_____

|  |  |
|---|---|
| | : |
| INTERCONTINENTAL MARBLE | : |
| CORPORATION, | : |
| | : |
| PLAINTIFF, | : |
| | : |
| v. | : |
| | : |
| UNITED STATES, | : |
| | : |
| DEFENDANT. | : |

CONSOL. COURT NO. 98-02961

_____:

[Plaintiff's motion for summary judgment granted; Defendant's cross-motion for summary judgment denied.]

Dated April 30, 2003

*Miller and Chevalier Chartered* (*Richard H. Abbey* and *Joel W. Rogers*), for Plaintiff Intercontinental Marble Corporation.

*Robert D. McCallum, Jr.*, Assistant Attorney General, Civil Division, United States Department of Justice; *John J. Mahon*, Acting Attorney in Charge, International Trade Field Office (*Harry A. Valetk*); *Chi S. Choi*, of counsel, Office of Assistant Chief Counsel, International Trade Litigation.

OPINION AND ORDER

*EATON, Judge*: Before the court are cross-motions for summary judgment pursuant to USCIT R. 56. By its motion Plaintiff challenges the United States Bureau of Customs and Border Protection's ("Customs")[1] classification of certain entries of merchandise as "other calcareous

---

[1]    Effective March 1, 2003, the United States Customs Service was renamed the United States Bureau of Customs and Border Protection. *See Reorganization Plan Modification*

(continued...)

stone" under subheading 6802.92.00 of the Harmonized Tariff Schedule of the United States

("HTSUS") (1998).  Plaintiff argues that the subject merchandise is properly classifiable under

HTSUS subheading 6802.91.05 as "Worked monumental or building stone . . . Other: Marble,

travertine and alabaster: Marble: Slabs."  By its cross-motion the United States ("Government"),

on behalf of Customs, maintains that the subject merchandise is properly classifiable under

HTSUS subheading 6802.92.00 and asks the court to deny Plaintiff's motion and dismiss this

action.[2]  The court has jurisdiction pursuant to 28 U.S.C. § 1581(a) (2000).  Where jurisdiction is

predicated on 28 U.S.C. § 1581(a), Customs's classification is subject to *de novo* review.  *See* 28

U.S.C. § 2640; *E.T. Horn Co. v. United States*, 27 CIT __, __, Slip Op. 03-20 at 4 (Feb. 27,

2003) (quoting *Clarendon Mktg., Inc. v. United States*, 144 F.3d 1464, 1466 (Fed. Cir. 1998)).[3]

---

[1](...continued)
*for the Dep't of Homeland Security*, H.R. Doc. 108-32, at 4 (2003).

[2]      According to the Summons the subject merchandise was entered between
1995–98 and liquidated under various rates of duty.  The Summons states that the duty rates for
"other calcareous stone" during this period was: 5.8 percent *ad valorum*, 5.6 percent *ad valorum*,
or 5.3 percent *ad valorum*, and the duty rates for "marble slabs" was: 2.7 percent *ad valorum* or
2.6 percent *ad valorum*.  In its memorandum in support of its motion Plaintiff states that "[f]or
the primary years here at issue in this case, 1997 and 1998, the rate of duty for the marble slabs
provision was 2.6 percent.  The duty rate for the other calcareous stone provision was 5.3
percent."  *See Pl.'s Mem. Supp. Mot. Summ. J.* at 4.  In its papers Defendant states that Plaintiff
"imported several types of hard stones . . . in 1996 through 1997," and that the "other calcareous
stone" duty rate was 5.7 percent *ad valorum*, and the "marble slabs" duty rate was 2.7 percent *ad
valorum*.  *See Def.'s Mem. Supp. Cross-Mot. Summ. J. and Opp'n to Pl.'s Mot. Summ. J.* at 1, 3.

[3]      Pursuant to 28 U.S.C. § 2639(a)(1) "a classification of merchandise by Customs is
presumed to be correct.  Therefore, the burden of proof is upon the party challenging the
classification."  *Mita Copystar Am. v. United States*, 21 F.3d 1079, 1082 (Fed. Cir. 1994) (citing
*Jarvis Clark Co. v. United States*, 733 F.2d 873, 876 (Fed. Cir. 1984)).  This statutory
presumption of correctness, however, applies only to Customs's factual findings.  *See Universal
Elecs. Inc. v. United States*, 112 F.3d 488, 492 (Fed. Cir. 1997) (quoting *Marbury v. Madison*, 5
U.S. 137, 177 (1803)) ("The situation is quite different, however, with respect to pure questions
(continued...)

This court may resolve a classification issue by means of summary judgment. *See Bausch & Lomb, Inc. v. United States*, 148 F.3d 1363, 1365 (Fed. Cir. 1998). Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact . . . ." USCIT R. 56(c). The court employs a two-step process when analyzing a classification issue: "first, construe the relevant classification headings; and second, determine under which of the properly construed tariff terms the merchandise at issue falls." *Bausch & Lomb*, 148 F.3d at 1365 (citing *Universal Elecs.*, 112 F.3d at 491). The first step in this process is a question of law; the second step is one of fact. *Id.* Summary judgment of a classification issue "is appropriate when there is no genuine dispute as to the underlying factual issue of exactly what the merchandise is." *Id.* (citing *Nissho Iwai Am. Corp. v. United States*, 143 F.3d 1470, 1472 (Fed. Cir. 1998); *IKO Indus., Ltd. v. United States*, 105 F.3d 624, 626–27 (Fed. Cir. 1997); *Rollerblade, Inc. v. United States*, 112 F.3d 481, 483 (Fed. Cir. 1997); *Sports Graphics, Inc. v. United States*, 24 F.3d 1390, 1391 (Fed. Cir. 1994)); *see Avenues In Leather, Inc. v. United States*, 317 F.3d 1399, 1402 (Fed. Cir. 2003) (citing *Mead Corp. v. United States*, 283

---

[3](...continued)
of law, such as the proper interpretation of a particular tariff provision or term. Questions of law such as these lie within the domain of the courts, for '[i]t is emphatically the province and duty of the judicial department to say what the law is.'"); id. (citing *Goodman Mfg., L.P. v. United States*, 69 F.3d 505, 508 (Fed. Cir. 1995)) ("[W]e conclude that although the presumption of correctness applies to the ultimate classification decision, [plaintiff] properly interprets *Goodman* as standing for the proposition that, as a practical matter, the presumption carries no force as to questions of law."); *E.T. Horn*, 27 CIT at __, Slip Op. 03-20 at 4 (citing *Universal Elecs.*, 112 F.3d at 492) ("The presumption does not apply when there is no material fact at issue, because the presumption does not carry force with questions of law."). Here, there is no factual dispute as to what the subject merchandise is and, therefore, the statutory presumption of correctness does not attach to Customs's classification.

F.3d 1342, 1345–46 (Fed. Cir. 2002) ("*Mead IV*")) ("If we determine that there is no dispute of material facts, our review of the classification of the goods collapses into a determination of the proper meaning and scope of the HTSUS terms that, as a matter of statutory construction, is a question of law."). Here, there is no genuine dispute as to any material fact. The parties agree that the subject merchandise, variously identified as "Crema Marfil," "Negro Marquina," "Rojo Alicante," "Emperador Marron," and "Botticino": (1) is "stone 'slabs' meeting the definition set forth in Additional Note 1 to Chapter 68, HTSUS," *Parties' Agreed Statement of Material Undisputed Facts* at ¶ 2; (2) is not geological marble but, rather, various types of non-crystalline calcareous stone and, more specifically, non-crystalline limestone,[4] *id.* at ¶¶ 4, 8; and (3) is capable of taking a polish. *See Pl.'s Mem. Supp. Mot. Summ. J.* ("*Pl.'s Mem.*") at 3 ("These are hard stones comprised of calcium carbonate and are capable of taking a high polish."); *Def.'s Mem. Supp. Cross-Mot. Summ. J. and Opp'n to Pl.'s Mot. Summ. J.* ("*Def.'s Resp.*") at 5 ("[N]o dispute exists about the essential nature and material characteristics of the merchandise . . . .").

Classification of merchandise under the HTSUS is governed by the General Rules of Interpretation ("GRI"). *See Carl Zeiss, Inc. v. United States*, 195 F.3d 1375, 1379 (Fed. Cir. 1999) (citing *Baxter Healthcare Corp. of P.R. v. United States*, 182 F.3d 1333, 1337 (Fed. Cir. 1999)) ("The HTSUS General Rules of Interpretation (GRI) and the Additional U.S. Rules of

---

[4]     Customs's laboratory analysis of the stones identified as "Crema Marfil," "Negro Marquina," and "Rojo Alicante" found them to be "composed of . . . other calcareous stone (limestone)"; analysis of the stone identified as "Emperador Marron" found it to be "other calcareous stone (dolomitic limestone)"; analysis of stone identified as "Beige Marble" or "Botticino" found it to be "composed of limestone . . . ." *See Parties' Agreed Statement of Material Undisputed Facts* at ¶ 4.

Interpretation (U.S. GRI) govern the proper classification of all merchandise and are applied in numerical order."). GRI 1 states that "for legal purposes, classification shall be determined according to the terms of the headings and any relative section or chapter notes . . . ." GRI 1. GRI 6 states that "the classification of goods in the subheadings of a heading shall be determined according to the terms of those subheadings and any related subheading notes and, *mutatis mutandis*, to the [General Rules of Interpretation] on the understanding that only subheadings of the same level are comparable." GRI 6. Furthermore, "[w]hen . . . a tariff term is not defined in either the HTSUS or its legislative history, 'the term's correct meaning is its common meaning.'" *Rocknel Fastener, Inc. v. United States*, 267 F.3d 1354, 1356 (Fed. Cir. 2001) (quoting *Mita*, 21 F.3d at 1082). "The common meaning of a term used in commerce is presumed to be the same as its commercial meaning." *Id.* (citing *Simod Am. Corp. v. United States*, 872 F.2d 1572, 1576 (Fed. Cir. 1989)). "To ascertain the common meaning of a term, a court may consult 'dictionaries, scientific authorities, and other reliable information sources' and 'lexicographic and other materials.'" *Id.* (quoting *C.J. Tower & Sons of Buffalo, Inc. v. United States*, 673 F.2d 1268, 1271 (C.C.P.A. 1982); *Simod*, 872 F.2d at 1576). Finally, as an aid to understanding the meaning of a tariff term, "a court may refer to the Explanatory Notes . . . which do not constitute controlling legislative history but nonetheless are intended to clarify the scope of HTSUS subheadings and to offer guidance in interpreting subheadings." *Mita*, 21 F.2d at 1082 (citing *Lynteq, Inc. v. United States*, 976 F.2d 693, 699 (Fed. Cir. 1992)); *see* Harmonized Commodity Description and Coding System (3d ed. 2002) ("Explanatory Notes" or "EN").

Both parties agree that the term "marble" is not defined by either the HTSUS or its

legislative history. This being the case, Plaintiff argues that: (1) the common meaning of the term, as that term is understood commercially, should be employed; and (2) such meaning was used under the predecessor statute to the HTSUS, the Tariff Schedule of the United States ("TSUS"), and that there is no evidence that Congress intended to change its meaning. *See Pl.'s Mem.* at 5 ("Customs used to classify stones under the term marble that met the common trade definition—all stones that took a polish as marble."). Plaintiff contends that, with the adoption of the HTSUS, Customs changed its position so that now "all stone terms used in the HTSUS should be construed to cover only those stones meeting the geological definition of the term and not the common and commercial meaning of the term . . . ." *Id.* at 5–6. Plaintiff argues that Customs's change in position is not in accordance with law because it has "cite[d] no authority for this proposition in the HTSUS itself, in the legislative history or in the case law. Instead, the only rationale for its change is a general notion that, whenever possible, it should harmonize the treatment of stones with the treatment accorded by other countries." *Id.* at 6. Plaintiff further contends that "[a]s Congressional legislative history and case law make clear, absent clear and specific evidence to the contrary, a tariff term is construed the same way under the HTSUS as it was under the TSUS." *Id.* at 6 (citing *Anhydrides & Chems., Inc. v. United States*, 130 F.3d 1481, 1484 (Fed. Cir. 1997)).

The Government counters that the court should reject Plaintiff's arguments for several reasons. First, it contends that the court should afford deference to Customs's interpretation of the term "marble" as contained in a Customs "Informed Compliance Publication," *What Every Member of the Trade Community Should Know About: Classification of Marble* ("*Classification*

*of Marble*"), because of this publication's "power to persuade." *Def.'s Resp.* at 7–8; *see United States v. Mead Corp.*, 533 U.S. 218, 228 (2001) ("*Mead III*"); *see Mead III* (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)) ("The weight [accorded to an administrative] judgment in a particular case will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements and all those factors which give it power to persuade, if lacking power to control." (bracketing in original)). Second, the Government argues that the common meaning of the term "marble" is limited to the geological meaning of that term. *Def.'s Resp.* at 9. Third, the Government argues that the Explanatory Notes to the HTSUS provide evidence that the term "marble" is to be narrowly construed as only covering geological marble. *Id.* at 16–17. Finally, the Government contends that the "interpretation of the tariff term 'marble' under the TSUS does not control the interpretation of that term under the HTSUS." *Id.* at 17.

Thus, the question before the court is the meaning of the term "marble" as used in HTSUS heading 6802.

DISCUSSION

A.  *The common meaning of the term "marble" includes stones that would not be considered geological marble*

Plaintiff argues that interpreting the term "marble" under HTSUS subheading 6802 in accordance with the geological meaning of the term "marble" is incorrect. Plaintiff states that

> [w]hile courts will normally consider 'scientific authorities' as one
> of the resources in determining the common and commercial

> meaning of a tariff term, tariff terms are *not* to be construed
> according to their scientific meaning where that meaning differs
> from the common and commercial meaning, in the absence of
> legislative intent.

*Pl.'s Mem.* at 10 (emphasis in original) (citing *Alexandria Int'l, Inc. v. United States*, 13 CIT 689, 692 (1989)).  Plaintiff argues that courts have adopted this policy because of the nature of commerce and those who work within it.  *See id.* at 11 (quoting *Two Hundred Chests of Tea*, 22 U.S. 430, 438 (1824)) ("The object of the duty laws is to raise revenue, and for this purpose to class substances according to the general usage and known denominations of trade. . . . [Congress] did not suppose our merchants to be naturalists, or geologists, or botanists.  It applied its attention to the description of articles as they derived their appellations in our own markets, in our domestic as well as our foreign traffic."); *id.* (quoting *Meyer & Lange v. United States*, 6 Ct. Cust. 181, 182 (1915)) ("[T]ariff acts are drafted not in the terms of science, but in the language of commerce, which is presumptively that in common use . . . .").


For its part, the Government agrees that the common meaning of the term marble is controlling but argues such meaning is narrower than that claimed by Plaintiff.  The Government contends that "the common meaning of the term supports the plain language of the HTSUS. Specifically, most dictionaries define the term marble as covering only limestone in a crystalline state, achieved through metamorphosis." *Def.'s Resp.* at 12 (citing The Random House Dictionary of the English Language 875 (1969) (defining "marble" as "limestone *in a more or less crystalline state*, and capable of taking a high polish . . . ." (emphasis added)); Oxford Dictionary on CDROM, Version 2.0 (1999) (defining "marble" as "[l]imestone in a crystalline

(*or, less strictly, also granular*) *state* and capable of taking a polish." (emphasis added))). Even though neither of the cited sources seem to make its point, the Government insists that since "dictionary definitions provide that marble is narrowly described as limestone in a crystalline state achieved through metamorphosis[, b]ecuase [Plaintiff's] stones do not meet this definition, they cannot be classified as marble under the HTSUS." *Id.* at 14.

The court does not agree that the meaning of the term "marble" as enacted in the HTSUS is limited to the geological definition of that term. While some general usage dictionaries may define "marble" as a type of stone that is geologically distinct from non-crystalline limestone, it is beyond debate that the commercial meaning of the term "marble" includes the subject merchandise, as it is "marble" within the argot of the trade.[5]

Ordinarily "[t]he common meaning of a term used in commerce is presumed to be the same as its commercial meaning." *Rocknel*, 267 F.3d at 1356; *see also*, U.S. Dep't of the Interior, *A Dictionary of Mining, Mineral, and Related Terms* 680 (1968) ("*Marble.* Denotes a metamorphic rock composed essentially of calcite, dolomite, or a combination of the two, but long usage of the term by the quarry industry also includes serpentines, alabaster, onyx, travertines, and some granites . . . . *Commercially, any limestone that is sufficiently hard and coherent to take a good polish is called a marble.*" (emphasis added)). Moreover, under the

---

[5] Because the Government nowhere addresses the issue of what the commercial definition of the term "marble" is, the court understands that the Government concedes the point that such definition includes the subject merchandise. Indeed, it is difficult to see how the Government could argue otherwise as Customs admits that "polished limestone (or limestone capable of taking a polish) is often called 'marble' in the trade." *Classification of Marble* at 4.

TSUS Customs established that certain non-crystalline limestones were included in the term "marble" where such stones met the commercial meaning of that term. *See* Headquarters Ruling Letter ("HRL") 087014 (June 12, 1990) ("Under the TSUS, all stones that polish, whether or not such stone met the technical definition of marble, were classified by Customs as marble."); *Classification of Marble* at 2. Once the common and commercial meaning of a tariff term has been ascertained, Customs is obliged to classify merchandise in accordance with such meaning absent "clear evidence" that such meaning has changed. *Lonza, Inc. v. United States*, 46 F.3d 1098, 1106–07 (Fed. Cir. 1995) (citing *United States v. Great Pac. Co.*, 23 C.C.P.A. 319, 324 (1936)) ("The common meaning of a tariff term, once established, remains controlling until a subsequent change in statute compels a revised construction of the term's meaning. . . . Absent clear evidence of legislative intent to embrace an alternative statutory definition, and in light of its historical pedigree, the court cannot help but conclude that the TSUS definition . . . survives as the common and commercial meaning of the term under the HTS.").[6] Thus, while definitions of tariff terms "established" under the TSUS may not be controlling under all circumstances, they

---

[6]    Courts have had occasion to examine the interrelation between a determined meaning of a tariff term and congressional intent. *See, e.g.*, *Rico Imp. Co. v. United States*, 469 F.2d 699, 704 (C.C.P.A. 1972) (Lane, J., dissenting) (citing *Steinhardt & Bros. v. United States*, 9 Ct. Cust. 62, 66 (1919); *Great Pac.*, 23 C.C.P.A. at 324) ("The predecessor of this court had occasion to consider the scope of the term 'wood' . . . . The common meaning of 'wood[]' . . . is presumed to have continued unless it has been changed by subsequent legislation."); *John C. Rogers & Co. v. United States*, 436 F.2d 1034, 1036 n.1 (C.C.P.A. 1971) (citing *Great Pac.*, 23 C.C.P.A. at 324 ("'A common meaning, having been once established and determined by a court, *will be presumed* to continue until the language is changed by subsequent legislation,' by which we think the court meant only that a previous determination that the common meaning of a tariff term as of the relevant date included or excluded certain articles would be precedent when the same issue was raised in another case. . . ." (emphasis in original, citation omitted)); *Sears, Roebuck & Co. v. United States*, 46 C.C.P.A. 79, 83 (1959) (citing *Great Pac.*, 23 C.C.P.A. at 324); *United States v. Pac. Butchers Supply Co.*, 22 C.C.P.A. 355, 358 (1934) (citing *United States v. Ben Felsenthal & Co.*, 16 Ct. Cust. 15 (1928)).

remain vital in the HTSUS absent evidence that Congress intended a change. *See Anhydrides*, 130 F.3d at 1484 (citing *Lonza*, 46 F.3d at 1107; *Beloit Corp. v. United States*, 18 CIT 67, 84, 843 F. Supp. 1489, 1502 (1994)) ("In light of the administrative mandate and legislative purpose that conversion to the harmonized system would leave existing duty rates undisturbed as much as possible, the courts have consulted the classification history under the TSUS as a guide to resolving uncertainties that have arisen because of the nomenclature."); *see* Omnibus Trade and Competitiveness Act of 1988, H.R. Rep. No. 100-576 (the "Trade Act"), at 548 (1988), *reprinted in* 1988 U.S.C.C.A.N. 1547, 1581. Thus, the common and commercial term "marble," as established in the TSUS as including non-crystalline limestone that can take a polish, survives with the same meaning in the HTSUS unless there is "clear evidence of legislative intent to embrace an alternative statutory definition . . . ." *Lonza*, 46 F.3d at 1107.

B.      *There is no indication that Congress intended to change the meaning of the term "marble" under the HTSUS*

In the instant case it is clear that Customs, following the adoption of the HTSUS, changed its position as to what types of stone fall within the meaning of the term "marble." Customs explained that

> under the newly-enacted HTSUSA, whose basic provisions are common to the tariffs of all of the nations using the Harmonized Commodity Description and Coding System, it is imperative that the United States, whenever possible, define the various tariff terms in a manner consistent with all nations utilizing the HTSUSA.[7] It is for this reason that we have settled upon the commonly-accepted geological definition of various stones to determine the proper classification under the HTSUSA.

---

[7]     Probably should read "Harmonized Commodity Description and Coding System."

HRL 087014; *see Classification of Marble* at 2. Thus, Customs concluded that it should no longer consider the HTSUS term "marble" to encompass all merchandise that was understood to be "marble" in the trade, or classified as "marble" under the TSUS. Rather, Customs decided that, following the enactment of the HTSUS, the term "marble" included only stone that met the geological definition of that term. While not specifically acknowledging this change, the Government argues that there are two reasons why this court should sanction Customs's new position: (1) Customs's interpretation of the tariff term, as set out in its publication *Classification of Marble*, is entitled to judicial deference; and (2) the plain language of the HTSUS shows that Congress intended a narrow definition of the term "marble."

1.      *The publication Classification of Marble is not entitled to Skidmore deference*

The Government insists that the changes in the tariff schedules resulting from the enactment of the HTSUS evince the congressional intent to exclude the subject merchandise from being classified as marble. Relying on this perceived congressional intent, Customs notified importers by means of its publication *Classification of Marble* that it would henceforth employ a "geological" standard for classifying marble. Customs explained that

> [n]umerous Headquarters rulings have held that stone is classifiable based on geological definitions. . . . Therefore, any HTSUS subheading that refers to a particular stone by name will only cover products that conform to the geological definition for that stone. Often a product which may be called by the name of a specific stone in the trade (i.e., a "commercial" definition) fails to meet the geological definition of that stone; this type of item may not be classified under the HTSUS provision for the specific stone.

*Classification of Marble* at 2 (citations omitted).[8]  Customs further explained:

> The Headquarters rulings that follow geological definitions are
> supported by the *Explanatory Notes*, which define stones in terms
> of their geological nature.  Thus, the Explanatory Notes to heading
> 2515, indicate that serpentine is not classified as marble even
> though it is often called "marble" in the trade, since serpentine and
> marble are geologically different.
>
> Furthermore, the *Explanatory Notes* to heading 2516, indicate that
> ecaussine may not be classified as granite even though it is often
> called "granite" in the trade, since it is a geologically distinct
> stone. . . .
>
> The *Explanatory Notes* to heading 6810 list examples of the types
> of stones which may be agglomerated with binders.  These
> examples include marble, limestone and serpentine.  By listing
> these stones separately, the *Explanatory Notes* indicate that marble,
> limestone and serpentine are regarded as distinct stones (because
> they are geologically distinct) even though limestone and
> serpentine are frequently called "marble" in the trade.

---

[8]      In support of the position that "numerous Headquarters rulings have held that stone is classifiable based on geological definitions" Customs cites several rulings.  *See Classification of Marble* at 2 (citing HRLs 085266 (Sept. 20, 1989) (classification of non-crystalline limestone); 085968 (Mar. 14, 1990) (classification of polished limestone); 952679 (Jan. 26, 1993) (classification of geological serpentine (carbonated)); 955738 (Mar. 30, 1994) (classification of geological serpentine); 950057 (Oct. 31, 1991) (classification of carved serpentine); 086894 (Sept. 23, 1990) (classification of basalt and diorite); 951525 (Aug. 25, 1992) (classification of syenite)).  While Customs may have consistently maintained in these rulings that the geological composition of stone to be classified as marble is controlling under the HTSUS, none of the cited HRLs predate the enactment of the HTSUS or otherwise address the proper definition of the term "marble" as used in the TSUS.  Indeed, the progenitor of Customs's current position, HRL 085266, provides no basis for Customs's change of position but merely states, in full, "The geological definition is used in determining the tariff classification of the merchandise at issue [marble] under the HTSUSA."  HRL 085266 at 2.  While later rulings give some indication of why Customs perceived a need to change its position, *see, e.g.*, HRL 087014 ("[U]nder the newly-enacted HTSUSA, whose basic provisions are common to the tariffs of all of the nations using the Harmonized Commodity Description and Coding System, it is imperative that the United States, whenever possible, define the various tariff terms in a manner consistent with all nations utilizing the HTSUSA."), Customs nowhere gives any specific indication of its authority to do so.

*Id.* at 2–3.[9]

The Government argues that the reasoning in *Classification of Marble* is entitled to *Skidmore* deference because it is "consistent, thorough and persuasive." *Def.'s Resp.* at 8 (citing *Skidmore*, 323 U.S. at 139–40). The Government further argues that because this publication "carefully explains the agency's position to the trade community, and supports its reasoning with geological findings . . . this Court should defer to Customs's publication interpreting the meaning of the tariff term 'marble.'" *Id.* The court does not agree. If it were the case that the term "marble" had not been clearly invested with a common and commercial meaning under the TSUS, the Government's argument might have some merit. However, because the common and commercial meaning of the term "marble" was "established" under the TSUS,[10] Customs must continue to employ that meaning unless it can show that there is "clear evidence" of congressional intent to the contrary. *Lonza*, 46 F.3d at 1107. Here, the Government has failed to

---

[9]     That "serpentine" is specifically named in EN 25.15 tends to weaken the Government's position that the term "marble" is limited to only stone meeting the geological definition of that term, and to bolster Plaintiff's position. Specifically, EN 25.15 states that "[t]his heading . . . *excludes*: (a) Serpentine or ophite (a magnesium silicate *sometimes called marble*) . . . ." EN 25.15 (first emphasis in original; second emphasis added). By indicating that the term "marble" as used in subsection 2515 does not include serpentine the drafters of the Explanatory Notes tacitly acknowledge that the term "marble" as used in the HTSUS is broader than the geological term, but provide guidance that one type of non-calcareous stone, i.e., serpentine, is specifically removed from the meaning of the term "marble" under subheading 2515. *See* EN 25.16 (stating subheading 2516 "includes . . . serpentine marble . . . which, being a natural form of magnesium silicate, cannot be classified in heading 25.15").

[10]     The Government nowhere specifically takes issue with Plaintiff's allegation that Customs used the commercial meaning of the term "marble" under the TSUS and, indeed, seems to concede this point. *See Def.'s Resp.* at 17 (citing *Pl.'s Mem.* at 5) ("Under the TSUS, Intercontinental points out that Customs classified as marble 'all stones that took a polish as marble.'").

demonstrate that Congress, by the adoption of the HTSUS, intended to change the common and commercial meaning of the term "marble."  Thus, there being an "established" common and commercial meaning of the term "marble," and no evidence of congressional intent to change it, the Government cannot claim deference as a reason for this court to work that change.

Finally, while Customs's practice, as set out in *Classification of Marble*, may have been consistent since the passage of the HTSUS, the court does not find that this document itself has the "power to persuade" such that it should be accorded deference.  Beyond its statement that "it is imperative that the United States, whenever possible, define the various tariff terms in a manner consistent with all nations utilizing the HTSUSA," *see* HRL 087014, Customs provides no further reasoning in support of its position.  Indeed, this statement does not constitute thorough or valid reasoning but merely a justification.  A mere desire on the part of Customs to be "consistent with all nations" cannot be substituted for congressional intent.  Thus, the publication lacks the valid reasoning necessary for it to have the "power to persuade."  *See Jewelpak Corp. v. United States*, 297 F.3d 1326, 1331 (Fed. Cir. 2002) (citing *Mead III*, 533 U.S. at 228); *Mead IV*, 283 F.3d at 1346 ("Under *Skidmore*, a classification ruling receives a measure of deference proportional to its 'power to persuade.'  That power to persuade depends on the thoroughness evident in the classification ruling, the validity of its reasoning, its consistency with earlier and later pronouncements, the formality attendant the particular ruling, and all those factors that give it power to persuade." (citations and footnote omitted)).

2.      *The plain language of the HTSUS does not show Congress intended a
        narrow definition of the tariff term "marble"*

The Government argues that "the plain language of the tariff schedule reflects Congress's

intent to limit the term 'marble' to only those stones that meet a narrow and precise scientific

definition." *Def.'s Resp.* at 10.  Although its argument is couched in terms of plain meaning, the

Government nonetheless urges that "this Court may consider other related provisions of the

HTSUS" in order for this plain meaning to be properly understood.  *Id.* (citing *Item Co. v. United

States*, 19 CIT 1000, 1005 (1994), *aff'd* 98 F.3d 1294 (Fed. Cir. 1996)) ("To help in resolving

[this] conflict . . . the Court turns to the related provisions of Chapter 63.").  Here, the provision

at issue is Chapter 68 which provides, in relevant part:

| | |
|---|---|
| 6802 | Worked monumental or building stone (except slate) and articles thereof, other than goods of heading 6801; mosaic cubes and the like, of natural stone (including slate), whether or not on a backing; artificially colored granules, chippings and powder, of natural stone (including slate): . . . |
| | Other: |
| 6802.91 | Marble, travertine and alabaster: |
| | Marble: |
| 6802.91.05 | Slabs |
| 6802.91.15 | Other |
| 6802.91.20 | Travertine . . . |
| 6802.91.30 | Alabaster |
| 6802.92.00 | Other calcareous stone . . . . |

HTSUS Chapter 6802.[11]  Upon reading this provision it is apparent that there are no words that

modify or limit the term "marble" to its geological meaning or otherwise.[12]  The Government

---

[11]        Travertine is variously defined as "a mineral consisting of a massive usu[ally] layered calcium carbonate (as aragonite or calcite) formed by deposition from spring waters or esp. from hot springs," Webster's Unabridged Third New International Dictionary 2433 (1981), or "a whitish or light-coloured concretionary limestone, usually hard and semi-crystalline, deposited from water holding lime in solution . . . ." Oxford English Dictionary; *see also Pl.'s Mem.* Appx. A5, American Society for Testing and Materials, *Standard Terminology Relating to Dimension Stone* ("*Standard Terminology*") at 20 (defining travertine as "a variety of crystalline or microcrystalline limestone distinguished by layered structure.  Pores and cavities commonly are concentrated in some of the layers, giving rise to an open texture."); *Pl.'s Mem.* Appx. A7, *Stone World Buyer's Guide 2000* at 133 (defining travertine as "a form of limestone precipitated from ground waters, as in caves or orifices of springs . . . .").  Indeed, in another publication included with Plaintiff's submissions, "travertine" and "marble" are broken out into separate categories.  *See Pl.'s Mem.* Appx. A4, American Society for Testing and Materials, *Standard Specification for Marble Dimension Stone (Exterior)*, *reprinted in* Marble Institute of America, *Dimension Stone Design Manual IV* ("*Standard Specification*") M-17 ("Available Marble Varieties"), M-23 ("Available Travertine Varieties") (1991) .  The court notes that all of the subject merchandise here at issue is listed within the "marble" section of this publication, *see id.* at M-19, -20, -21, and there is no argument that the subject merchandise is, in fact, travertine.

[12]        A review of Chapter 68 in its entirety shows that there is no support for the argument that the term "marble" as contained in Chapter 68 was intended to be read narrowly by reference to the Chapter Notes or Additional U.S. Notes for Chapter 68, or heading 6802 itself. The Chapter Note that specifically addresses heading 6802 states that "[i]n heading 6802 the expression '*worked monumental or building stone*' applies not only to the varieties of stone referred to in heading 2515 or 2516, but also to all other natural stone (for example, quartzite, flint, dolomite and steatite) similarly worked . . . ."  Chapter 68 Note 2 (emphasis in original). This Chapter Note simply states that heading 6802 broadly covers all types of "natural stone" provided for in Chapter 25, including those not specifically enumerated within the headings of that Chapter.  *See* HTSUS headings 2506 (quartzite), 2518 (dolomite), 2526 (natural steatite), 2530 ("mineral substances not elsewhere specified or included").  The Additional U.S. Notes provide no further support that the term "Marble" should be read narrowly; rather, they only provide a definition for the term "slabs" as contained in heading 6802.  *See* Additional U.S. Note 1.  Furthermore, there is no support for construing the term "marble" narrowly, as the term appears in heading 6802, by reference to the heading itself.  This heading encompasses "Worked monumental or building stone (except slate) and articles thereof, other than goods of heading 6801; mosaic cubes and the like, of natural stone (including slate), whether or not on a backing; artificially colored granules, chippings and powder, of natural stone (including slate) . . . ." HTSUS 6802.  There are no modifying words or phrases within the heading that limit the term

(continued...)

argues, however, that "[t]o understand the meaning of the terms 'marble' and 'other calcareous stone' under Heading 6802, this Court must first examine Chapter 25, the section of the HTSUS in which Heading 2515 appears, which provides for the same stones but presented in an unworked state." *Def.'s Resp.* at 10; *see* HTSUS Chapter 68 Note 2 ("In heading 6802 the expression '*worked monumental or building stone*' applies not only to the varieties of stone referred to in heading 2515 or 2516 [("Granite, porphyry, basalt, sandstone and other monumental or building stone")], but also to all other natural stone (for example quartzite, flint, dolomite and steatite) similarly worked; it does not, however, apply to slate." (emphasis in original)).  The Government thus directs the court's attention to heading 2515, which provides, in relevant part:

| 2515 | Marble, travertine and other calcareous monumental or building stone of an apparent specific gravity of 2.5 or more, and alabaster, whether or not roughly trimmed or merely cut, by sawing or otherwise, into blocks or slabs of a rectangular (including square) shape: |
|---|---|
| | Marble and travertine: |
| 2515.11.00 | Crude or roughly trimmed |
| 2515.12 | Merely cut, by sawing or otherwise, into blocks or slabs of a rectangular (including square) shape: |
| 2515.12.10 | Marble |
| 2515.12.20 | Travertine |

---

[12](...continued)
"marble" to the geological meaning of that term.  Finally the Government presents no argument or evidence that the other headings or subheadings of Chapter 68 provide further guidance as to the meaning of the term "marble" in heading 6802.

2515.20.00                       Other calcareous monumental or building
                                 stone; alabaster . . . .

HTSUS 2515. The Government argues that "the heading which provides for marble, Heading

2515, is . . . limited by density, and explicitly describes . . . 'calcareous stones,' a reference to the

chemical nature of the stone, i.e., being composed of calcium carbonate." *Def.'s. Resp.* at 11.

The Government continues that within Chapter 25 "marble is listed under subheading

2515.12.10. Another calcareous stone, travertine, is distinguished by being named in the heading

and listed under a separate provision, subheading 2515.12.20. As a result, the plain language of

the HTSUS distinguishes between these two types of calcareous stones." *Id.*[13]


        The court does not agree that the arguments advanced by the Government support its

contention that term "marble" is limited to its "geological" meaning by "restrictive technical

language" for several reasons. First, while heading 2515 does cover marble, travertine, and

"other calcareous monumental or building stone of an apparent specific gravity of 2.5 or more,"

there is no indication from the Chapter Notes, the Additional U.S. Notes, or the headings

themselves that the terms of Chapter 25 are to be construed in accordance with the geological

---

[13]     In support of its argument the Government contends that "Chapter 25 . . . defines every article it covers using restrictive technical language." *Def.'s Resp.* at 10–11 (citing headings 2501 (salt and pure sodium chloride), 2511 (natural barium sulfate, and natural barium carbonate), 2512 (siliceous fossil meals), and 2519 (natural magnesium carbonate, fused magnesia, dead-burned magnesia)). Examining the language of the statute, however, the terms contained therein do not uniformly employ "scientific" or "restrictive technical language." For example, one heading cited by the Government is the classification heading for "salt" and includes "table salt and denatured salt." *See* HTSUS 2501.00. The inclusion of this latter language provides evidence that the term "salt" is not necessarily identified by its chemical composition or constrained by "restrictive technical language," but may include, for instance, merchandise commonly known as table salt.

meaning of those terms.[14]  Second, that the HTSUS specifically names both "marble" and "travertine" within heading 2515 does not help the Government's argument that the "other calcareous stone" provision of heading 6802 completely encompasses all non-crystalline limestone capable of taking a polish—including that understood in the trade as "marble."  While it is true that "travertine"—a semi-crystalline calcareous stone usually known in the trade as "marble," *see Standard Terminology* at 20 (defining travertine as "a variety of crystalline or microcrystalline limestone . . . ."); *A Dictionary of Mining, Mineral, and Related Terms* 680 (stating travertine is considered "marble" in the trade)—is specifically named in the HTSUS, this is simply not conclusive evidence that Congress intended to: (1) commence the use of geological definitions for the classification of other stone; or (2) classify all non-crystalline limestone capable of taking a polish as "Other . . . calcareous stone."[15]  Indeed, a more logical conclusion is that, although travertine is generally deemed "marble" in the trade, it is sometimes distinguished from "marble."  For example, travertine was classified under a separate heading from "marble" within Chapter 5 of the TSUS.  *See* TSUS headings 514.51–81 ("Marble, breccia, and onyx, and articles of one or more of these substances"), 515.24 ("Travertine and articles of travertine"); *see also Standard Specification* at M-17 ("Available Marble Varieties"), M-23 ("Available Travertine Varieties").  Thus, it is likely that Congress sought to ensure, in the event there was

---

[14]      The Government's argument that the scope of heading 2515 provides evidence of congressional intent concerning the scope of heading 6802 is undercut by these headings not classifying similar merchandise in a consistent manner.  For example, pursuant to heading 2515 "alabaster" is grouped with "other calcareous stone," whereas pursuant to heading 6802 "alabaster" is grouped with "marble and travertine."  *Compare* HTSUS 2515.12 *with* HTSUS 6802.91.

[15]      This finding is not meant to suggest that by the adoption of the HTSUS Congress did not intend that other provisions should not be governed by geological definitions.

any confusion on the point, that travertine should be classified within the same subheading as

"marble" and not within the subheading for "other calcareous stone." Finally, were the court to

accept the Government's argument that the common meaning of the term "marble" includes only

"limestone in a more or less crystalline state," *see Def.'s Resp.* at 12, specifically naming

travertine would be surplussage as travertine—which is a crystalline or microcrystalline

calcareous stone—would necessarily be classified as "marble."[16]

---

[16]     There is additional support for the proposition that Congress did not intend to alter the meaning of "marble" as that term was understood under the TSUS such that the subject merchandise would be excluded from that term under the HTSUS. Under tariff schemes in place prior to the enactment of the TSUS courts construed the term "marble" as having the geological meaning of that term. *See Bockmann v. United States*, 158 F. 807, 808 (1908) (finding certain imported non-crystalline limestone not to be "marble" because "[t]he best authorities define marble as a limestone having a granular and crystalline structure. It is crystalline limestone. Now, according to the weight of the testimony, Hauteville stone is not a crystalline limestone at all. It is a high-grade limestone, ornamental and polishable; but we think that it is not sufficient to take it out of the limestone and put [it] into the marble paragraph. It is unquestionably limestone."); *United States v. Jackson*, 1 Ct. Cust. 25, 27 (1910) (finding merchandise to be marble where it was: (1) "limestone with a crystalline granular structure"; (2) "susceptible of a high polish"; and (3) "not only decorative and ornamental in effect, but . . . imported into and used in this country for that purpose . . . ."); *United States v. Tompkins Kiel Marble Co.*, 14 Ct. Cust. 7, 8–9 (1926) (following *Jackson*). Here, it is undisputed that under the TSUS Customs did not limit the term "marble" to the geological meaning of that term. *See* HRL 087014; *Classification of Marble* at 2. Rather, Customs understood the term "marble" to include non-crystalline limestone that met the commercial meaning of such term, i.e., all limestone capable of taking a polish. Given that Customs's interpretation of the term "marble" under the TSUS was at odds with prior judicial constructions of that term, had it been Congress's intent to fix the meaning of the term "marble" to encompass only stone meeting the geological meaning of that term it would have done so unambiguously.

     A comparison of the tariff rates of the TSUS and HTSUS provides further support that Congress did not intend to exclude the subject merchandise from the term "marble." As stated in the the Trade Act, "the HTS fairly reflects existing tariff and quota treatment and that the conversion is essentially revenue-neutral. . . . [A]ny changes in the rates of duty are consequential to the process of converting to the new nomenclature . . . ." H.R. Rep. 100-576, at 548, 1988 U.S.C.C.A.N. at 1581. As amplified by the Court of Appeals for the Federal Circuit: "Customs' interpretation of the HTSUS classification in a way that would markedly increase the

(continued...)

C.     *The Explanatory Notes do not support the Government's contention that the term
       "marble" as used in the HTSUS includes only stone that meets the geological
       meaning of that term*

The court also finds that the Explanatory Notes to the HTSUS do not support the

Government's position. While the Explanatory Notes are not binding, they do offer guidance.

*Mita*, 21 F.3d at 1082. The Explanatory Notes provide as follows:

> *Marble* is a hard calcareous stone, homogeneous and fine-grained,
> often crystalline and either opaque or translucent. Marble is
> usually variously tinted by the presence of mineral oxides
> (coloured veined marble, onyx marble, etc.), but there are white
> varieties.

EN 25.15. It is significant that this Explanatory Note states that "Marble is . . . often

crystalline . . . ." In other words, the guidance from the Explanatory Note is that marble is often

crystalline but not always. Thus, the Explanatory Notes suggest that there is no "clear evidence"

that Congress intended to adopt a "geological" definition of the term "marble" that excluded non-

crystalline stone such as the subject merchandise. *Lonza*, 46 F.3d at 1107. Rather, the

Explanatory Notes suggest that non-crystalline limestone that meets the common meaning of that

term continues to be classified as marble.

---

[16](...continued)
duty, although there was no prior indication that the rate was intended to undergo a major
increase, is viewed with caution." *Anhydrides*, 130 F.3d at 1484 (citing *Hemscheidt Corp. v.
United States*, 72 F.3d 868, 872 (Fed. Cir. 1995)). Under TSUS subheading 514.61 or 514.65
(1987) marble slabs were assessed a duty of either 2.1 percent *ad valorum* or 2.8 percent *ad
valorum*. Under HTSUS subheading 6802.91.05 (1987) marble slabs were assessed a duty of 2.8
percent *ad valorum*, and under subheading 6802.92.00 (1987) "other calcareous stones" were
assessed a duty of 6.0 percent *ad valorum*. Thus, Customs's interpretation of the term "marble"
"is viewed with caution" as it would result in an increase of more than double the duty for the
subject merchandise although there was "no prior indication that the rate was intended to
undergo a major increase . . . ." *Anhydrides*, 130 F.3d at 1484.

D.      *Reorganization of tariff terms in the HTSUS does not suggest that Congress intended to change the meaning of the term "marble"*

Finally, the Government argues that, with respect to the provisions at issue, "the interpretation of the tariff term 'marble' under the TSUS does not control the interpretation of that term under the HTSUS." *Def.'s Resp.* at 17.  The Government contends that "classification under the prior tariff acts is . . . irrelevant because the language of the HTSUS significantly varies from the previous tariff acts." *Id.* at 18 (citing the Trade Act, H.R. Rep. 100-576, 1988 U.S.C.C.A.N. at 1582).  Further, the Government contends that "a change in the language of a statute is generally construed to import a change in meaning unless the contrary is made plainly to appear in other ways." *Id.* at 18 (citing *Schott Optical Glass, Inc. v. United States*, 11 CIT 899, 678 F. Supp. 882 (1987), *aff'd*, 862 F.2d 866 (Fed. Cir. 1988); *Berns & Koppstein v. United States*, 13 CIT 191 (1989); *United States v. Am. Brown Boveri Elec. Corp.*, 17 C.C.P.A. 329 (1929); *Am. Express Co. v. United States*, 2 Ct. Cust. 459 (1912)).  The court understands the Government's argument to be the following: because the language of the HTSUS "significantly varies" from the TSUS, it is "inappropriate" to rely on the meaning of the term "marble" as established under that tariff scheme because by enacting the HTSUS Congress intended the term "marble" to include only stone meeting the geological definition of that term.  In support of its argument that the language of the HTSUS "significantly varies" from that of the TSUS the Government states:

> Under the TSUS, marble appears in Schedule 5, Part 1, under the superior heading that precedes items 514.51 through 514.81 . . . .
>
> However, under the HTSUS, marble is provided for under a heading with more limiting language referencing the geological ("calcareous") and scientific ("apparent specific gravity of 2.5 or

> more") nature of stone.  Since the HTSUS now explicitly puts
> "marble" in a separate subheading from "other calcareous stones,"
> Congress showed its intent to narrow the term.

*Def.'s Resp.* at 19 (citations omitted).  In other words, the Government is arguing that because

the term "other calcareous stone" now appears in the HTSUS as a separate subheading from

"marble" the term "marble" has been narrowed to include only natural stone that meets the

geological meaning of that term.  Again, the court does not agree.

While the term "marble" is now found in several sections of HTSUS, the court does not

find mere re-enactment to be a "definite change in the nomenclature" of the statute such that the

term "marble" excludes limestone that can take a polish.  In this regard, the court finds *Toy Biz,*

*Inc. v. United States*, 27 CIT __, Slip Op. 03-02 (Jan. 3, 2003), instructive.  In *Toy Biz* the court

examined Customs's classification of certain toys identified as "action figures."  It was conceded

by both parties that the subject merchandise constituted "playthings for children"; however, the

question remained whether the subject merchandise was properly classifiable as "dolls" or "other

toys" under the HTSUS.  Under the TSUS, the relevant classification heading read: "Dolls, and

parts of dolls including doll clothing," *id.* at __, Slip Op. 03-02 at 12; the relevant HTSUS

heading provides: "Dolls representing only human beings and parts and accessories thereof."  *Id.*

at __, Slip Op. 03-02 at 12–13.  The court found that the inclusion of the wording "representing

human beings" to constitute "a definite change in the nomenclature of the 'dolls' provision from

the TSUS."  *Id.* at __, Slip. Op. 03-02 at 13.  Here, there is no such "definite change in the

nomenclature" indicating that the term "marble" should be interpreted differently under the

HTSUS from how it was under the TSUS.  The term "marble" has merely been re-ordered into

different sections of the statute. Indeed, there are no new words modifying the term "marble" such that the term should be given a different meaning from that in the TSUS. *See id.* Thus, the court cannot agree that the position of the term "marble" within Chapter 68 provides the foundation urged by the Government. While HTSUS 2515 covers "other calcareous stone," and this provision may include certain types of limestone, there is no showing that the "other" subheading completely and absolutely brings within its ambit all limestone with an apparent specific gravity of more than 2.5. The Government simply has not provided "clear evidence of legislative intent to embrace an alternative statutory definition" of the common and commercial term "marble" under the HTSUS. *Lonza*, 46 F.3d at 1107.

CONCLUSION

The court finds that Customs improperly classified the subject merchandise as "other calcareous stone" pursuant to HTSUS subheading 6802.92.00. In addition, the court finds that the subject merchandise is properly classified as "marble slabs" under HTSUS subheading 6801.91.05. Therefore, the court grants Plaintiff's motion for summary judgment and denies the Government's cross-motion for summary judgment. The parties are hereby ordered to settle and file with the court a proposed form of judgment in conformity with this opinion within thirty days of the date of this order.

 

 

 

                                                           _____
                                                                             Richard K. Eaton

Dated: April 30, 2003
        New York, New York

**ERRATUM**

Intercontinental Marble Corporation v United States, Court No. 98-02961, Slip-Op 03-47, dated April 30, 2003.

Page 1:

Counsel for Defendant the United States should read as follows:

Robert D. McCallum, Jr., Assistant Attorney General, Civil Division, United States Department of Justice; John J. Mahon, Acting Attorney in Charge, International Trade Field Office (Harry A. Valetk); Chi S. Choy, of counsel, Office of Assistant Chief Counsel, International Trade Litigation.

May 14, 2003